ROCCO GUARNIERI ET AL. *v.* LOUIS
GUARNIERI ET AL.
(AC 27963)

DiPentima, Gruendel and Borden, Js.

Argued October 22—officially released December 11, 2007

*Mark F. Katz*, for the appellant (named defendant).

*Nathalie Feola-Guerrieri*, for the appellees (plaintiffs).

*Opinion*

GRUENDEL, J. This case concerns a dispute between brothers. The defendant Louis "Luigi" Guarnieri appeals from the judgment of the trial court dismissing all nine counts of his counterclaim against the plaintiff Rocco Guarnieri.[1] The defendant claims that the court improperly concluded that it lacked subject matter jurisdiction thereon. We affirm in part and reverse in part the judgment of the trial court.

The record discloses the following factual allegations and procedural history. In the summer of 1994, the plaintiff, the defendant, Giuseppe Leale and Umile Ceci (shareholders) formed a corporation known as 4-D Rose, Inc. (corporation). The corporation issued 300 shares of common stock. Leale and Ceci each received twenty-four shares, while the defendant received 126 shares. In an effort to shield the remaining 126 shares from the plaintiff's pending divorce proceeding, the shareholders agreed that those shares would be issued in the name of the defendant to be held by him for the benefit of the plaintiff.[2] Shortly thereafter, the corporation purchased real property known as 42 Dean Place in Bridgeport (property), which consisted of forty residential rental units and was the primary asset of the corporation.

Although the parties initially managed the property jointly, disputes soon arose. In exchange for maintaining and managing the property, the plaintiff occupied an apartment at the property without paying rent.

---

[1] For convenience, we refer to Rocco Guarnieri and Louis Guarnieri as the plaintiff and the defendant, respectively. We note that Giuseppe Leale and Umile Ceci were named as plaintiffs in this action. Moreover, although 4-D Rose, Inc., originally was named a defendant, the plaintiff withdrew the action against 4-D Rose, Inc., and, thus, it is not a party to this appeal.

[2] At some point during the pendency of the litigation, the plaintiff and the defendant became the sole shareholders of the corporation.

Thereafter, the plaintiff granted himself a monthly salary of $3500 over the objection of the defendant. The defendant subsequently questioned the plaintiff's management of the property, alleging a series of corporate wrongs on the part of the plaintiff, including the plaintiff's failure to provide financial documentation and to prepare timely management reports, his refusal to allow the defendant to participate in business decisions regarding the property and his refusal to account for the income generated by the property. On May 10, 1999, the parties entered into a stipulation before the court, *Melville, J.*, which provided that Donadeo Realty & Management, Inc., would act as the exclusive receiver of rents for the property. In contravention of that stipulation, the plaintiff on January 1, 2001, notified all tenants of the property that rents were to be paid to a post office box under his control. In addition, accountant Paul Bologna performed an extensive review of the corporation's records, which revealed significant discrepancies between the management reports filed by the plaintiff and the actual deposits made to the corporation's accounts.

On August 4, 1998, the plaintiff filed suit against the defendant to, inter alia, compel him to transfer to the plaintiff 126 shares of the corporation. The defendant responded by filing an answer and a counterclaim. The defendant's counterclaim consisted of nine counts that alleged (1) that the defendant and the corporation were deprived of vital information concerning the payment of rent and expenses of the building owned by the corporation, (2) a mistake in the allocation of shares to the plaintiff, (3) that the management of the corporation was deadlocked and the dissolution of the corporation was necessary, (4) conversion by the plaintiff of the business opportunities and income generated by the corporation, (5) fraud on the part of the plaintiff in his management of the property, (6) breach of the plaintiff's

fiduciary duty to the defendant, (7) breach of contract, (8) unjust enrichment and (9) theft in violation of General Statutes § 52-564.

On January 24, 2003, the parties entered into a partial settlement agreement (agreement) whereby the plaintiff had the right to purchase the defendant's shares in the corporation. The agreement stated that it was entered into by "Rocco" and "Luigi," whom it explained "are brothers and each claims an ownership interest" in the corporation. The agreement also noted that "Luigi and Rocco" collectively would be referred to in it as either the " '[p]arties' or '[s]hareholders' . . . ."

The agreement explained that "certain disputes exist between the [s]hareholders with respect to the management of the [c]orporation and the [p]roperty, as well as with respect to amounts that may be due to either or both of the [s]hareholders from the [c]orporation and personal claims by each [s]hareholder against the other . . . ." It continued: "[T]he [s]hareholders desire to resolve their business disputes with respect to the [c]orporation and the [p]roperty through acquisition by one [s]hareholder of the shares of the [c]orporation owned by the other . . . and establishment of a mechanism to resolve any and all remaining claims between the [s]hareholders . . . ."

Paragraph nine of the agreement set forth that mechanism. Titled "Parties Directed to Resolve Differences or Proceed to Hearing," it states that "[e]ach of the [s]hareholde[rs] agrees to attempt, in good faith, to adjust any and all financial disagreements each has with the other to the extent related to the operation of the [c]orporation at any time (the 'corporate financial differences'). The [p]arties agree to deliver to the [c]ustodian and to the other party, within one week of a request in writing by the [c]ustodian, any information the [c]ustodian deems necessary to resolve the corporate financial differences between the [p]arties and the

corporation. The [c]ustodian shall endeavor to obtain an agreement between the [p]arties of their corporate financial differences. Each party shall have the right to submit a position paper to the [c]ustodian on the issues. If, after good faith efforts to resolve these corporate financial differences any have not been resolved, then either party may request a hearing before the [c]ourt to resolve any and all such differences. In this event, the [c]ustodian shall pay whatever sums he is holding in escrow to any party and in the amounts that the [c]ourt shall direct."

The motion for acceptance and approval of the settlement filed by the plaintiff averred that "[the plaintiff] and [the defendant] are the sole shareholders of the [c]orporation." In that motion, the plaintiff further stated that "[t]his relief is requested because the parties have reached a *partial settlement of this case* and this [o]rder is necessary to carry out and effectuate that *partial settlement*." (Emphasis added.) On January 31, 2003, the court approved and accepted the settlement agreement. In its order accepting and approving the settlement agreement, the court, *Levin, J.*, stated that the agreement "provides for a partial settlement of certain claims in the above-captioned litigation" and further noted that "the parties have voluntarily entered into such partial settlement pursuant to the terms of that certain [s]ettlement [a]greement . . . ." The plaintiff thereafter purchased the defendant's shares of the corporation, leaving him the sole owner thereof.

Litigation of the remaining issues between the parties continued. In April, 2003, the custodian, pursuant to paragraph nine of the agreement, set forth a schedule for the parties to submit position papers in support of their various claims against one another and the corporation. One day before those papers were due, the plaintiff informed the custodian that he was unable to present a position paper. On June 10, 2003, counsel

for the plaintiff filed a motion to withdraw his appearance, and the plaintiff filed a pro se appearance. On June 16, 2003, the defendant notified the custodian that further attempts to resolve the remaining issues were unlikely to be successful and that a motion to terminate the custodian would be filed in order to have a hearing on the remaining issues before the court, as provided for in the agreement. The defendant on July 10, 2003, filed a motion for termination of the custodian and other relief, and a certificate of closed pleadings in which he sought a hearing before the court.

A trial date of May 24, 2005, was set. On that date, the plaintiff, as sole shareholder of the corporation, filed a withdrawal of the corporation's counterclaim against the plaintiff. The plaintiff further filed a motion to dismiss the defendant's counterclaim, which stated: "[The plaintiff] respectfully moves that the [c]ounterclaim dated February 12, 2001, brought by [the defendant] be dismissed as there is no subject matter jurisdiction *to hear an accounting claim* brought by a shareholder, [the defendant], and not derivatively by the corporation."[3] (Emphasis added.) The plaintiff did not move to dismiss any of the other eight counts contained in the counterclaim.

In the memorandum of law that accompanied the motion to dismiss, the plaintiff asserted that "[t]he other counts claim reallocation of shares, corporate dissolution, conversion, fraud, breach of fiduciary duty, breach of contract and unjust enrichment. All issues were resolved except for an accounting in 2003."[4] The agreement, particularly paragraph nine, indicates otherwise. As the court, *Richards, J.,* noted in its memorandum of decision, "[t]he plain meaning of the agreement

---

[3] Count one of the defendant's counterclaim sought an accounting.

[4] We note that the plaintiff's statement omitted the theft count alleging a violation of § 52-564.

suggests that once the issue of ownership and management of the corporation was resolved, the parties had the option of a hearing to resolve any other financial disputes against each other." Nevertheless, the court did not resolve those disputes. Rather, it concluded that the defendant lacked standing: "[The defendant] was a shareholder when the complaint was filed and the counterclaims brought. Today, he is no longer a shareholder in the corporation by virtue of the plaintiff acquiring his shares. When [the defendant] brought the counterclaims against the plaintiff, he was acting as one of [the corporation's] shareholders. Since the corporation is now owned entirely by the plaintiff and [the defendant] no longer has a stake in the outcome of the counterclaims, [the defendant] no longer fairly and adequately represents the interest of the corporation. The court, therefore, is without subject matter jurisdiction because [the defendant] has no standing in this case." On that basis, the court dismissed the defendant's counterclaim, and this appeal followed.

The defendant's sole claim on appeal is that the court improperly concluded that it lacked subject matter jurisdiction. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Citations omitted; internal quotation marks omitted.) *Fairfax Properties,*

*Inc.* v. *Lyons*, 72 Conn. App. 426, 431–32, 806 A.2d 535 (2002).

On appeal, the defendant maintains that the court improperly concluded that, by virtue of the agreement entered into by the parties and the defendant's subsequent sale of his shares in the corporation to the plaintiff, he was without standing to proceed on any of the nine counts contained in his counterclaim. We agree.

"The issue of standing implicates this court's subject matter jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as

distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Smith* v. *Snyder*, 267 Conn. 456, 460–61, 839 A.2d 589 (2004).

In the seminal case of *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 422 A.2d 311 (1979), our Supreme Court addressed the distinction between derivative and personal causes of action in the corporate context. It stated: "A distinction must be made between the right of a shareholder to bring suit in an individual capacity as the sole party injured, and his right to sue derivatively on behalf of the corporation alleged to be injured. . . . Generally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation—to the shareholders collectively. . . . [I]t is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding 'secondarily,' deriving his rights from the corporation which is alleged to have been wronged. . . . It is, however, well settled that if the injury is one to the plaintiff as a stockholder, and to him individually, and not to the corporation, as where an alleged fraud perpetrated by the corporation has affected the plaintiff directly, the cause of action is personal and individual. . . . In such a case, the plaintiff-shareholder sustains a loss separate and distinct from that of the corporation, or from that of other shareholders, and thus has the right to seek redress in a personal capacity for a wrong done to him individually." (Citations omitted.) Id., 281–82.

In the present case, the court's analysis centered exclusively on the defendant's inability fairly and adequately to represent the interest of the corporation. By

dismissing all nine counts of the defendant's counterclaim, the court implicitly concluded that each was derivative in nature.[5] The court failed to address in any manner the defendant's contention that the counterclaim included personal claims against the plaintiff, despite the fact that each of the nine counts alleged an injury to the defendant. Our plenary review of the question of subject matter jurisdiction requires us to resolve that issue.

At the time that the plaintiff moved to dismiss the defendant's counterclaim, five significant events had transpired. First, the parties had entered into a partial settlement agreement that expressly provided for further court proceedings to resolve the remaining financial disagreements between the parties. Second, the court entered an order accepting that "partial settlement." Third, the plaintiff purchased the defendant's shares of the corporation, leaving the plaintiff as the sole owner of the shares. Fourth, after efforts to resolve their remaining disagreements proved unsuccessful, the defendant brought the matter before the court pursuant to paragraph nine of the agreement. Fifth, the plaintiff, as sole owner of the corporation, withdrew the counterclaim of the corporation against the plaintiff. Thus, all that remained for the court's consideration was the defendant's individual counterclaim against the plaintiff.

We agree with the court that the defendant lacked standing to pursue the first four counts of the counterclaim. The defendant conceded in his opposition to the motion to dismiss that the relief sought on count one was "reimbursement to the corporation of all [moneys] due to the corporation from the plaintiff" stemming from accounting irregularities. Because the plaintiff is sole owner of the corporation, the defendant cannot

---

[5] On appeal, the plaintiff asserts that all counts contain derivative claims.

claim an interest therein. Likewise, count four, which alleged conversion of the corporation's business opportunities and income, plainly belongs to the corporation, and the defendant has not alleged otherwise. No longer a shareholder in the corporation, the defendant cannot maintain a derivative action on its behalf. See General Statutes §§ 33-721 and 52-572j (permitting shareholders to maintain derivative actions); accord 2 A.L.I., Principles of Corporate Governance: Analysis and Recommendations (1994) § 7.02. Moreover, counts two and three, which alleged a mistake in the allocation of shares to the plaintiff and that the management of the corporation was deadlocked, thereby necessitating the dissolution of the corporation, fully were resolved when the defendant sold his shares of the corporation to the plaintiff in accordance with the agreement.

The final five counts of the defendant's counterclaim are another story. Construed in the light most favorable to the defendant, they allege individual injuries. Count five alleged that the plaintiff made fraudulent representations to the defendant, on which the defendant relied to his detriment. Count six alleged that the plaintiff breached his fiduciary duty to the defendant. Count seven alleged that the plaintiff violated the May 10, 1999 stipulation, resulting in a breach of his contract with the defendant. Count eight alleged that the plaintiff was unjustly enriched at the defendant's expense. Finally, count nine alleged that the plaintiff committed theft in violation of § 52-564, which deprived the defendant of moneys otherwise due to him.

As one commentator has noted, it can be "difficult to determine whether a particular claim belongs to a shareholder individually or to the corporate entity itself." M. Ford, Connecticut Corporation Law & Practice (2d Ed. 2007) § 4.06, p. 4-88. Normally, the court would examine each count and ascertain whether the defendant has demonstrated an injury that is separate

and distinct from that of any other shareholder or the corporation. See *State* v. *Snyder*, supra, 267 Conn. 461. This is not the normal case. This case involves a closely held corporation.[6] Most importantly, the alleged perpetrator of corporate wrongs is now the sole owner of that very corporation. There is thus no shareholder similarly situated to the defendant. Furthermore, the corporation, wholly owned by the plaintiff, has withdrawn the corporation's counterclaim against the plaintiff.

We also are mindful of the fact that the plaintiff voluntarily entered into a partial settlement agreement. "A settlement agreement is a contract among the parties." *Muldoon* v. *Homestead Insulation Co.*, 33 Conn. App. 695, 700, 638 A.2d 41 (1994), rev'd on other grounds, 231 Conn. 469, 650 A.2d 1240 (1994); see also *Powell* v. *Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("[a] settlement agreement is a contract that is interpreted according to general principles of contract law"). The agreement acknowledged that disputes existed between the parties as to both the management of the corporation and as to personal disputes. The plaintiff represented to the court that the agreement was a "partial agreement" that set forth "a mechanism to resolve any and all remaining claims between the [s]hareholders . . . ." That mechanism, described in paragraph nine of the agreement, included resort to the court to resolve the remaining claims. On January 31, 2003, Judge Levin entered an order approving and accepting

---

[6] In *Fink* v. *Golenbock*, 238 Conn. 183, 200 n.14, 680 A.2d 1243 (1996), our Supreme Court stated: "At least one authority has suggested that in the case of a closely held corporation, the court may choose to treat a derivative action as a direct action: 'In the case of a closely held corporation . . . the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery . . . .' 2 American Law Institute, Principles of Corporate Governance: Analysis and Recommendations (1994) § 7.01 (d)."

the agreement, which stated that the agreement "provides for a partial settlement of certain claims in the above-captioned litigation" and further noted that "the parties have voluntarily entered into such partial settlement pursuant to the terms of that certain [s]ettlement [a]greement . . . ."

Finally, the plaintiff's contention that the agreement concerns only the claims of shareholders, and not individual parties, is without merit. At its outset, the agreement stated that "Rocco and Luigi are brothers and each claims an ownership interest in the shares of [the corporation]" and provided that they would collectively be referred to as either the " '[p]arties' or '[s]hareholders' . . . ." Subsequent references to "the shareholders" was mere shorthand for the plaintiff and the defendant. Paragraph nine, for example, demonstrates that the terms "shareholders" and "parties" are used interchangeably. It provides in relevant part: "Each of the [s]*hareholde*[rs] agrees to attempt, in good faith, to adjust any and all financial disagreements each has with the other . . . . *The* [p]*arties* agree to deliver to the [c]ustodian and to the other *party* . . . any information the [c]ustodian deems necessary to resolve the corporate financial differences between *the* [p]*arties* and the corporation. The [c]ustodian shall endeavor to obtain an agreement between *the* [p]*arties* of their corporate financial differences. Each *party* shall have the right to submit a position paper to the [c]ustodian on the issues. If, after good faith efforts to resolve these corporate financial differences any have not been resolved, then either *party* may request a hearing before the [c]ourt to resolve any and all such differences." (Emphasis added.) The use of the term "shareholder" in the agreement does not signify that the agreement concerns shareholder claims exclusively.

Under the unique facts of this case and in light of the plaintiff's peculiar status as both alleged perpetrator

of corporate wrongs and sole shareholder of the corporation, we conclude that the defendant has the requisite standing to litigate counts five, six, seven, eight and nine of his counterclaim against the plaintiff. Considered in the light most favorable to the pleader, the defendant's alleged injuries are separate and distinct from those of the corporation and any shareholder. Accordingly, the court's determination that it lacked subject matter jurisdiction over those claims was improper.

The judgment is reversed only as to counts five through nine of the counterclaim and the case is remanded for further proceedings on those counts. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.