KIM M. WASKO ET AL. *v.* DANIEL T.
FARLEY, JR., ET AL.
(AC 28074)

Harper, Lavine and Pellegrino, Js.

Argued February 4—officially released June 3, 2008

*Eddi Z. Zyko*, for the appellant (named plaintiff).

*Robert O. Hickey*, with whom, on the brief, was *Sarah F. DePanfilis*, for the appellees (defendants).

*Opinion*

PELLEGRINO, J. In this negligence action, the plaintiff Kim M. Wasko[1] appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendants, Daniel T. Farley, Sr., and Daniel T. Farley, Jr. On appeal, the plaintiff claims that (1) the court failed to comply with General Statutes § 52-434, thereby depriving the court of subject matter jurisdiction, (2) the court required the plaintiff to attend jury selection in violation of General Statutes § 51-240 (a), Practice Book § 16-6 and the constitution of Connecticut, (3) the judge who denied the plaintiff's motion to be excused from jury selection improperly failed to recuse himself and (4) the court improperly charged the jury. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In December, 2004, the plaintiff commenced this negligence action, which arose out of personal injuries and damages she allegedly sustained as a result of a December 14, 2002 three vehicle accident involving the plaintiff,

---

[1] In the original complaint, Wasko and her husband, Robert Cavoli, were named as plaintiffs. Before the case was submitted to the jury, Cavoli withdrew all of his claims. All references to the plaintiff, therefore, refer solely to Wasko.

Francis Bement and Daniel T. Farley, Jr. On August 17, 2005, the court, *Brunetti, J.*, pretried the case without any resolution. On June 6, 2006, the court, *Gill, J.*, pretried the case again without any resolution. Judge Gill then set another pretrial for the following morning and ordered that the plaintiff be present for that proceeding.

On June 7, 2006, Judge Gill pretried the case for a third time, again failing to produce a resolution. Judge Gill then ordered that jury selection proceed. At the start of jury selection, counsel for the plaintiff made an oral motion to excuse the plaintiff from attending jury selection so that she could attend to her dental practice. Judge Gill denied this motion as to the first day of jury selection, stating that there were benefits in having the plaintiff present for jury selection. Jury selection was completed that day. The case thereafter was tried to the jury. The jury returned a verdict in favor of the defendants, and the court, *Prescott, J.*, rendered judgment accordingly. Additional facts will be set forth as necessary.

I

The plaintiff's first claim is that the court lacked subject matter jurisdiction to preside over jury selection.[2] It is her claim that at the time Judge Gill participated in jury selection, he was a senior judge and, in that capacity, was required to obtain the consent of the parties in order to preside over jury selection, which

[2] The plaintiff confuses subject matter jurisdiction with the court's authority to act. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and [to] determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004); *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999).

consent he failed to obtain. Our plenary review of her claim reveals it to be without merit. See, e.g., *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 8, 905 A.2d 55 (2006).

The plaintiff confuses the powers of a senior judge with those of a judge trial referee. A senior judge is a judge who elects to retire from full-time service prior to reaching the age of seventy.[3] See General Statutes § 51-50i.[4] A senior judge continues to retain all of the powers possessed prior to assuming senior status. See General Statutes § 51-50d.[5] A judge becomes a judge trial referee upon reaching the age of seventy and thereafter has limited authority to act.[6]

At the time of jury selection in the present case, Judge Gill had retired from full-time service but had not attained the age of seventy; he therefore held the position of senior judge. See General Statutes § 51-50i. Senior Judge Gill continued to have the power to preside over jury selection as well as every other power of a Superior Court judge. Accordingly, he did not need to obtain the consent of the parties as the plaintiff has argued. The plaintiff's claim is without merit.

[3] The constitution of Connecticut, article fifth, § 6, does not permit a Superior Court judge to hold office after reaching the age of seventy.

[4] General Statutes § 51-50i (a) provides in relevant part: "Any judge who retires from full-time active service, who has not attained the age of seventy . . . shall be a senior judge of the court of which he is a member during the remainder of the term of office for which he was appointed, and he shall be eligible for reappointment to succeeding terms as such senior judge . . . ."

[5] General Statutes § 51-50d provides in relevant part: "(a) A senior judge shall have all the powers of a judge of the court to which he is designated and assigned."

[6] The powers of a judge trial referee are described in General Statutes §§ 52-434, 52-434c and 52-549z. Under § 52-434, a judge trial referee may conduct jury selection in any criminal case, except class A or B felony or capital felony matters, without the consent of the parties. Other than civil cases referred to a judge trial referee under § 52-549z, there is no specific language in the statutes as to the power of a judge trial referee to conduct jury selection without the consent of the parties in civil jury cases.

## II

The plaintiff's second claim is that the court, *Gill, J.*, improperly compelled her attendance at jury selection. Specifically, the plaintiff claims that the court's actions violated (1) General Statutes § 51-240 (a) and Practice Book § 16-6, and (2) article first, § 1, of the constitution of Connecticut and article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments.[7] We disagree.

### A

The first portion of the plaintiff's claim is that General Statutes § 51-240 (a)[8] and Practice Book § 16-6[9] provide her with a right to have jury selection conducted by counsel and that her compelled attendance at jury selection violates this right. We are not persuaded.

The plaintiff's claim presents a matter of statutory interpretation over which our review is plenary. See, e.g., *Barry* v. *Quality Steel Products, Inc.*, supra, 280 Conn. 8. Our Supreme Court has stated: "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.

[7] The plaintiff's claim is limited to whether the court may compel a party's attendance at jury selection. The plaintiff does not claim that if the court has such a power, the court abused its discretion in exercising that power. Our review, therefore, is limited to whether the court could compel the plaintiff's attendance at jury selection.

[8] General Statutes § 51-240 (a) provides: "In any civil action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto."

[9] Practice Book § 16-6 provides in relevant part: "Each party shall have the right to examine, personally or by counsel, each juror outside the presence of other prospective jurors as to qualifications to sit as a juror in the action, or as to the person's interest, if any, in the subject matter of the action, or as to the person's relations with the parties thereto. . . ."

. . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, 285 Conn. 278, 286–87, 939 A.2d 561 (2008). "We interpret provisions of the Practice Book according to the same well settled principles of construction that we apply to the General Statutes." *Wilson* v. *Troxler*, 91 Conn. App. 864, 871, 883 A.2d 18, cert. denied, 276 Conn. 928, 929, 889 A.2d 819, 820 (2005).

General Statutes § 51-240 (a) provides in relevant part that "either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto." Practice Book § 16-6 tracks the operative language of General Statutes § 51-240 (a) word for word.[10] It is undisputed that these

---

[10] Practice Book § 16-6 replaces "either" with "each" and replaces the pronoun "his" with the gender neutral language "the person's."

sections confer on litigants the right to examine each prospective juror. Furthermore, a litigant may exercise this right either personally or through counsel. The plaintiff, however, argues that because this right may be exercised through counsel, compelling her attendance at jury selection violates her right to have counsel examine each juror.

"In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975). General Statutes § 51-240 (a) and Practice Book § 16-6 grant parties an affirmative right to examine each prospective juror. The court's order in no way hindered this right. No reasonable reading of these sections can be said to limit a court's inherent power to compel a party's attendance at jury selection.[11] The plaintiff's strained reading of these sections runs counter to their plain and unambiguous text. Accordingly, we reject the plaintiff's interpretation of the statute and rule of practice and conclude that there is no basis in law to justify her claim.

B

The next portion of the plaintiff's claim is that the court violated her fundamental state constitutional rights by compelling her attendance at jury selection.[12] Specifically, the plaintiff claims that the court violated her fundamental rights as set forth in article first, § 1, of the constitution of Connecticut[13] and article first,

---

[11] We have long recognized that "courts have a necessary inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and to facilitate the administration of justice as they deem necessary." *Hamernick* v. *Bach,* 64 Conn. App. 160, 167, 779 A.2d 806 (2001); see also *Rozbicki* v. *Huybrechts,* 218 Conn. 386, 390–91, 589 A.2d 363 (1991) (finding party may play significant role at voir dire).

[12] The plaintiff does not raise any federal constitutional claims.

[13] Article first, § 1, of the constitution of Connecticut provides: "All men when they form a social compact, are equal in rights; and no man or set of

§ 19, as amended by article four of the amendments.[14] We decline to review the plaintiff's state constitutional claims because she has not briefed them adequately.

In *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992), our Supreme Court set forth six factors that should be considered in examining state constitutional claims. Our Supreme Court repeatedly has emphasized that it "expect[s] counsel to employ [the *Geisler* factors] [i]n order to [allow reviewing courts] to construe the contours of our state constitution and [to] reach reasoned and principled results . . . ." (Internal quotation marks omitted.) *State* v. *Joyce*, 229 Conn. 10, 16 n.7, 639 A.2d 1007 (1994), on appeal after remand, 243 Conn. 282, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998). Our Supreme Court has "made clear that [when a party fails to analyze these factors separately and distinctly, appellate courts] are not bound to review the state constitutional claim." Id., 16. In her brief, the plaintiff did not include the *Geisler* factors in her analysis. The plaintiff's claim merely quotes two separate sections of our state constitution and then, without citing any legal precedent from this or any other jurisdiction and without providing any legal analysis as to either constitutional provision, claims that the court's order violated her fundamental rights. The plaintiff has not briefed adequately her state constitutional claim. Absent a proper analysis of the claim under the state constitution, we deem abandoned the plaintiff's claim. See *State* v. *Eady*, 249 Conn. 431, 435 n.6, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

men are entitled to exclusive public emoluments or privileges from the community."

[14] Article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments, provides in relevant part: "In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

## III

The plaintiff's next claim is that Judge Gill should have recused himself from the pretrial proceedings. Specifically, she claims that a reasonable person would have questioned Judge Gill's impartiality. We decline to review this unpreserved claim.

The following additional facts are relevant. Before jury selection commenced, Judge Gill expressed to the parties his opinion that this case should settle before trial. During jury selection, Judge Gill made statements in the presence of prospective jurors that "[w]e're not going to be here that long" and that voir dire would take only "[a]bout four or five minutes of your time." The plaintiff did not object to any of these alleged improprieties. The case thereafter proceeded to trial before Judge Prescott. After the jury reached its verdict, the plaintiff filed a postverdict motion seeking the recusal of Judge Gill and the voiding of jury selection. Judge Prescott denied the plaintiff's motion.

"[Canon 3 (c) (1) of the Code of Judicial Conduct][15] requires a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. The reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Even in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements

---

[15] Canon 3 (c) (1) (A) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."

of a fair exercise of judicial authority." (Citations omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 83 Conn. App. 142, 150, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004).

"[A]s a general rule, even in cases alleging judicial bias, this court will not consider the issue on appeal where the party failed to make the proper motion for disqualification at trial. . . . Failure to request recusal or move for a mistrial represents the [parties'] acquiescence to the judge presiding over the trial." (Citation omitted; internal quotation marks omitted.) *Schnabel* v. *Tyler*, 32 Conn. App. 704, 714, 630 A.2d 1361 (1993), aff'd, 230 Conn. 735, 646 A.2d 152 (1994); see also *Statewide Grievance Committee* v. *Friedland*, 222 Conn. 131, 146–47, 609 A.2d 645 (1992). "Our Supreme Court has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) *Fiddelman* v. *Redmon*, 31 Conn. App. 201, 213, 623 A.2d 1064, cert. denied, 226 Conn. 915, 628 A.2d 986 (1993); see also *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 543, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999).

Here, the plaintiff did not object to any of Judge Gill's alleged improprieties. She also did not ask Judge Gill to recuse himself on the basis of a lack of impartiality or seek a mistrial. It was only after the jury reached an unfavorable verdict that the plaintiff challenged Judge Gill's impartiality through a postverdict motion for recusal. This wait and see approach is the type of practice our Supreme Court has criticized and renders the plaintiff's claim unpreserved. Furthermore, the plaintiff has

not asked us to review this claim for plain error, and we decline, therefore, to afford it review under that extraordinary standard. See *State* v. *Marsala*, 93 Conn. App. 582, 590, 889 A.2d 943 ("This court often has noted that it is not appropriate to engage in a level of review that is not requested. . . . When the parties have neither briefed nor argued plain error [or review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)], we will not afford such review." [Internal quotation marks omitted.]), cert. denied, 278 Conn. 902, 896 A.2d 105 (2006).

Even if we assume that the plaintiff's claim was preserved properly, Judge Gill's actions do not lead a reasonable person to question his impartiality. Judge Gill presided over only jury selection in this case. Judge Prescott presided over the jury trial. Our review of the record reveals no bias against the plaintiff on the part of Judge Gill, nor does it raise a reasonable question concerning his impartiality. See *State* v. *Webb*, 238 Conn. 389, 464, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). There is nothing improper if a judge expresses his belief that a matter should settle as an alternative to trial. Moreover, the allegedly biased comments made during voir dire by Judge Gill were not improper and could not lead a reasonable person to question his impartiality. The plaintiff's claim is without merit.

IV

The plaintiff's final claim is that the court, *Prescott, J.*, improperly charged the jury. Specifically, she claims that the court (1) failed to charge the jury on damages resulting from additional costs incurred by the plaintiff's dental practice and (2) improperly charged the jury on mitigation of damages. We disagree.

The following additional facts are relevant to our disposition of the plaintiff's claim. The plaintiff claims that as a result of her injuries, she was forced to hire an additional dental assistant to do work that her injuries prevented her from doing. She testified that the dental assistant was paid approximately $22,000 a year and received health insurance and profit sharing benefits, resulting in a total cost to the business of approximately $30,000.

The plaintiff asked that the court charge the jury on damages related to the costs of hiring the additional dental assistant. The court informed the plaintiff that it "did not intend to charge the jury or permit [the plaintiff] to argue to the jury any claim of damages relating to the costs of [her] dental practice in hiring an additional dental assistant." The court stated that because the dental practice is organized as a limited liability company, any additional costs incurred by the business are not personal to the plaintiff and may be recovered only by the business entity. Because the business entity was not a party to the litigation, a charge on costs it incurred was not appropriate. The plaintiff noted her objection to the court's failure to give her requested instruction.

The plaintiff also objected to the court's instructing the jury on mitigation of damages. The plaintiff argued that such an instruction is not permitted because the defendants did not plead mitigation of damages as a special defense. The court found that mitigation does not have to be specially pleaded because it is not listed among the defenses in Practice Book § 10-50 that need to be specially pleaded.[16] Furthermore, the court found

[16] Practice Book § 10-50 provides: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though

that evidence was introduced pertaining to mitigation, thereby making such an instruction proper.

## A

The plaintiff's first claim is that the court improperly failed to charge the jury on damages incurred by the plaintiff's dental practice due to her limited work capabilities.[17] We disagree.

"It is well established that [a] request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . [A] trial court should instruct a jury on [every] issue for which there is any foundation in the evidence, even if weak or incredible. . . . The trial court has a duty not to submit any issue to the jury upon which the evidence would not support a finding. . . . Accordingly, the right to a jury instruction is limited to those theories for which there is any foundation in the evidence. . . . In determining whether any such foundation exists, [w]e must consider the evidence presented at trial in

nonpayment is alleged by the plaintiff), release, the statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be the plaintiff's own."

[17] In her appellate brief, the plaintiff titles this claim: "The court erred in failing to charge as to [the plaintiff's] loss of earnings and earning capacity." We believe this characterization is misleading. There is no indication in the record before us that the court refused to instruct the jury on the plaintiff's loss of earnings or diminished earning capacity. The court stated that it "did not intend to charge the jury or permit [the plaintiff] to argue to the jury any claim of damages relating to the *costs* of [the plaintiff's] dental practice in hiring an additional dental assistant." (Emphasis added.)

Furthermore, although the plaintiff refers to earnings and earning capacity in the heading of her argument, her argument itself makes clear that she sought to recover damages for the additional costs incurred by her business, rather than for any loss of earnings or diminished earning capacity. Accordingly, our review of this claim is limited to whether the court was required to give an instruction relating to the additional costs incurred by the plaintiff's business.

the light most favorable to supporting the [party's] request to charge. . . . Additionally, [w]hen . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Bonan* v. *Goldring Home Inspections, Inc.*, 68 Conn. App. 862, 867–68, 794 A.2d 997 (2002).

In the present case, we conclude that the court properly declined to instruct the jury on damages resulting from costs borne by the plaintiff's dental practice because the plaintiff, suing in her capacity as an individual, was not entitled to recover damages incurred by a limited liability company of which she is a member.

A limited liability company is a distinct legal entity whose existence is separate from its members. See *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 147, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). A limited liability company has the power to sue or be sued in its own name; see General Statutes §§ 34-124 (b) and 34-186; or may be a party to an action through a suit brought in its name by a member. See General Statutes § 34-187. A member may not sue in an individual capacity to recover for an injury the basis of which is a wrong to the limited liability company. See *Litchfield Asset Management Corp.* v. *Howell*, supra, 147; cf. *Guarnieri* v. *Guarnieri*, 104 Conn. App. 810, 819, 936 A.2d 254 (2007) (corporate shareholder may sue only on behalf of corporation through derivative suit).

The plaintiff brought this action in her individual capacity—the limited liability company was not a party. Damages incurred by the limited liability company, therefore, were not at issue in the case. Accordingly, the court properly declined to instruct the jury on damages

resulting from additional costs incurred by the plaintiff's dental practice.[18]

### B

The plaintiff's second claim is that the court improperly instructed the jury on mitigation of damages. Specifically, the plaintiff claims that the defendants did not plead mitigation of damages as a special defense, and, therefore, the court could not give an instruction on the subject. We are not persuaded.

"It has long been a rule of general application that one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries. . . . When there are facts in evidence that indicate that a plaintiff may have failed to promote his recovery and do what a reasonably prudent person would be expected to do under the same circumstances, the court, when requested to do so, is obliged to charge on the duty to mitigate damages." (Internal quotation marks omitted.) *Futterleib* v. *Mr. Happy's, Inc.*, 16 Conn. App. 497, 501, 548 A.2d 728 (1988).

---

[18] In her brief, the plaintiff quotes the entire case of *Lashin* v. *Corcoran*, 146 Conn. 512, 152 A.2d 639 (1959), as support for her claim. We find *Lashin*, however, to be inapplicable in this case because of the type of damages the plaintiff seeks to recover. In *Lashin*, the plaintiff sought damages resulting from her lost earning capacity. Id., 513. In the present case, the plaintiff did not seek damages for her lost earning capacity. Her only claim, and the only evidence she presented on the matter, related to the additional costs incurred by the limited liability company of which she is a member.

The plaintiff's brief also includes a lengthy four paragraph quotation from *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 904 A.2d 149 (2006). She has not provided, however, any legal analysis as to why this extensive quotation is relevant to her claim. See, e.g., *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 840–41, 784 A.2d 905 ("[t]he parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited" [internal quotation marks omitted]), cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

The plaintiff does not allege that there are no facts in evidence that warranted a mitigation instruction. Furthermore, the plaintiff has set forth no legal analysis as to why she believes mitigation must be specially pleaded before a defendant is entitled to a jury instruction on the subject.[19] Accordingly, we conclude that the court's charge on mitigation of damages was proper.[20]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[19] The plaintiff's brief, without offering any legal analysis of its own, urges us to adopt in full the reasoning of the Superior Court in *Bates* v. *Rebimbas*, Superior Court, judicial district of Waterbury, Docket No. CV-06-65000640-S, (September 13, 2006) (42 Conn. L. Rptr. 51). We decline this invitation because the plaintiff has failed to demonstrate that the reasoning of *Bates* is applicable to the facts present in this case.

[20] Even if we were to find that the court improperly charged the jury, the plaintiff cannot meet her burden of establishing that any impropriety prejudiced her. Our Supreme Court has often stated that "before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict." *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 243, 828 A.2d 64 (2003). In this case, we conclude that even if the court's instructions on damages were improper, any error was harmless. The plaintiff was able to place before the jury her full case regarding the defendants' alleged negligence. When presented with all the evidence, the jury found in favor of the defendants. Accordingly, any error in the court's instructions is rendered harmless by virtue of the jury's verdict.