## THOMAS GERMAIN v. TOWN OF MANCHESTER ET AL.
### (AC 33167)

DiPentima, C. J., and Beach and Bear, Js.

Argued February 8—officially released May 1, 2012

*Thomas Germain*, pro se, the appellant (plaintiff).

*Timothy P. O'Neil*, administrative staff attorney, for the appellees (named defendant et al.).

*Paula Sobral Pearlman*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (defendant freedom of information commission).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Thomas Germain, appeals from the judgment of the trial court dismissing his administrative appeal from the decision of the defendant freedom of information commission (commission).[1] On appeal, the plaintiff claims that the court improperly (1) interpreted General Statutes § 1-212 (g) to limit the permissible type of scanner that can be used to copy public documents to a scanner that is held in the hand and dragged across the page being copied, to the exclusion of any other battery operated scanner, (2) deferred to the commission's interpretation of § 1-212 (g)[2] and (3) concluded that the commission's prior decision in *Kreutzer* v. *Assistant Dean, Administration & Special Projects*, Freedom of Information Commission, Docket No. FIC 2004-463 (September 28, 2005), was inapplicable.[3] We affirm the judgment of the trial court.

---

[1] The plaintiff also named Joseph Camposeo, town clerk of Manchester, and the town of Manchester as defendants. The town clerk and the town joined in the brief of the commission.

[2] General Statutes § 1-212 (g) provides: "Any individual may copy a public record through the use of a hand-held scanner. A public agency may establish a fee structure not to exceed twenty dollars for an individual to pay each time the individual copies records at the agency with a hand-held scanner. As used in this section, 'hand-held scanner' means a battery operated electronic scanning device the use of which (1) leaves no mark or impression on the public record, and (2) does not unreasonably interfere with the operation of the public agency."

[3] The plaintiff also claims that the court improperly relied on *Municipal Clerk* v. *Freedom of Information Commission*, Superior Court, judicial district of New Britain, Docket No. CV-00-0500645-S (April 3, 2001), to find a legislative intent to limit the use of scanners to the type held in the hand and dragged across the page being copied. Because we conclude that the language of § 1-212 (g) unambiguously requires that the permissible scanners be "hand-held" and that the common meaning of this term does not include the plaintiff's flatbed scanner; see footnote 6 of this opinion; we do not

The record discloses the following relevant factual and procedural history. The plaintiff operates a title search company, which in part requires that he and his staff search through public records, especially land records, in the custody of the defendant town of Manchester (town) to determine for his clients whether various property titles are valid or encumbered in some manner. The plaintiff began operating this business at the end of 2001, at which time no scanners of any kind were permitted in the town clerk's office. The plaintiff first used a portable flatbed scanner to copy land records in the town clerk's office in 2002, the year that § 1-212 (g) was enacted. In March, 2009, the plaintiff was informed by the defendant Joseph Camposeo, its town clerk (town clerk), that he no longer could use his flatbed scanner to copy land records on the ground that his scanner was not considered a " 'hand-held scanner' " within the meaning of § 1-212 (g).[4] The plaintiff then complained to the commission that the town, through its town clerk, had violated the Freedom of

address this issue. See *Wasko* v. *Farley*, 108 Conn. App. 156, 162, 947 A.2d 978 ("General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." [Internal quotation marks omitted.]), cert. denied, 289 Conn. 922, 958 A.2d 155 (2008).

For the same reason, we also need not address the plaintiff's claim that the court improperly concluded that the evidence in the record supported the commission's finding that his scanner could cause damage to the public documents being scanned.

[4] The commission found, in its final decision, that "all of the land records at issue in this case are official copies of original documents, which are maintained in a vault at the Manchester town hall. The [defendant] town clerk testified that all of the records maintained in the vault in hardcopy form are also available electronically." Further, the commission found that the plaintiff did purchase a hand-held scanner, but he testified that "using a hand-held scanner is more difficult than using a flatbed scanner because it requires the person operating the scanner to move it across the records with a steady hand."

Information Act (act), General Statutes § 1-200 et seq.,[5] by refusing to allow him to copy public records using a portable flatbed scanner.

After a hearing, the commission found that the use of a flatbed scanner would be "very likely to leave a mark or impression on the record." The commissioner concluded that the relevant language in § 1-212 (g) was clear and unambiguous and that the plaintiff's flatbed scanner was not a hand-held scanner within the meaning of the statute. Accordingly, the commission dismissed the plaintiff's complaint.

The plaintiff appealed to the trial court, claiming that (1) § 1-212 (g) permits any battery operated scanner that does not mark the public record and does not interfere with the operation of the public agency, (2) the plaintiff's scanner, in fact, was equivalent to a hand-held scanner and (3) the commission had determined in a prior decision that a scanner did not have to meet the definition of " 'hand-held' " as set forth in the commission's decision dismissing his complaint. The court rejected each of the plaintiff's claims and, accordingly, dismissed the appeal. The plaintiff filed a motion to reargue, which was denied. This appeal followed.

Before addressing the plaintiff's claims, we set forth the applicable standard of review. "As we frequently have stated, [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review

---

[5] General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. . . ."

than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Williams* v. *Freedom of Information Commission*, 108 Conn. App. 471, 476, 948 A.2d 1058 (2008). "Ordinarily, we give great deference to the construction given a statute by the agency charged with its enforcement. . . . [T]he construction and interpretation of a statute is a question of law for the courts where the administrative decision is not entitled to special deference, particularly where . . . the statute has not previously been subjected to judicial scrutiny or time-tested agency interpretations." (Internal quotation marks omitted.) *Clerk of the Superior Court* v. *Freedom of Information Commission*, 278 Conn. 28, 36, 895 A.2d 743 (2006). Although this court previously has construed certain provisions of the act as they apply to the judicial branch; see, e.g., *Connecticut Bar Examining Committee* v. *Freedom of Information Commission*, 209 Conn. 204, 210–11, 550 A.2d 633 (1988); we have not addressed the application of the act to the issues presented in § 1-212 (g). Accordingly, our standard of review is de novo. *Clerk of the Superior Court* v. *Freedom of Information Commission*, supra, 37.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1–2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable

results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 301 Conn. 323, 338, 21 A.3d 737 (2011).

I

First, the plaintiff claims that the court improperly interpreted § 1-212 (g) to limit the permissible type of scanner that can be used to copy public documents to a scanner that is held in the hand and dragged across the page being copied, to the exclusion of any other battery operated scanners. We disagree.

We begin our analysis with the language of the relevant statute. As we have stated, § 1-212 (g) provides that "[a]ny individual may copy a public record through the use of a hand-held scanner. A public agency may establish a fee structure not to exceed twenty dollars for an individual to pay each time the individual copies records at the agency with a hand-held scanner. As used in this section, 'hand-held scanner' means a battery operated electronic scanning device the use of which (1) leaves no mark or impression on the public record, and (2) does not unreasonably interfere with the operation of the public agency."

Here, the plaintiff argues that regardless of the appearance of the word "hand-held" in the statute, because his portable flatbed scanner meets the other

criteria set forth in § 1-212 (g), his scanner qualifies as a " 'hand-held scanner.' "[6] In support of his argument, the plaintiff cites the statutory canon of construction providing that "[w]hen any piece of legislation defines the terms as they are used in it, such definition is exclusive of all others." *Neptune Park Assn.* v. *Steinberg*, 138 Conn. 357, 362, 84 A.2d 687 (1951). Thus, the plaintiff argues that § 1-212 (g) is definitional, and, therefore, the word "hand-held" is not part of that definition because that word is part of the term that is being defined, namely, " 'hand-held scanner.' " The trial court concluded to the contrary that "while the legislature used the word 'means' in the third sentence, a typical word in definitions, it is equally plausible that the legislature intended to indicate that, even in allowing hand-held scanners, it was setting forth 'conditions' on their use."

"In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Internal quotation marks omitted.) *Wasko* v. *Farley*, 108 Conn. App. 156, 163, 947 A.2d 978, cert. denied, 289 Conn. 922, 958 A.2d 155 (2008). Under the plaintiff's interpretation of the plain language of § 1-212 (g), the word "hand-held," in effect, is written out of the statute. It is well established that "[a] statute must be interpreted to give effect to all its provisions. . . . No word within a statute is to be rendered mere surplusage." (Citation omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 40, 664

---

[6] The plaintiff does not argue on appeal that his portable flatbed scanner is actually "hand-held" within the common meaning of the term. According to common understanding as expressed in dictionary definitions, "hand-held" is defined as something "small enough to be used or operated while being held in the hand or hands . . . ." Random House Webster's Unabridged Dictionary 866 (2d Ed. 2001). Moreover, the commission took administrative notice of the fact that a "hand-held scanner" is "commonly understood to be an optical scanner which is designed to be moved by hand across the object or document being scanned."

A.2d 719 (1995). Although it is true that "legislatures may define the terms used in their enactments and that courts are bound to accept their definitions"; *United Interchange, Inc.* v. *Spellacy*, 144 Conn. 647, 654, 136 A.2d 801 (1957); the plaintiff's interpretation of § 1-212 (g) would render meaningless the word "hand-held," which was included expressly by the legislature in § 1-212 (g). See id., 655 ("it is questionable whether a legislature could, by defining as a dog an animal having the components of a horse, subject the owner of a horse to the dog licensing statute"). Moreover, this obviously is not a case where the trial court, in requiring that " 'hand-held scanners' " be "hand-held," improperly read a term *into* a statute. "It is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words . . . nor is it our function to substitute our own ideas of what might be a wise provision in the place of a clear expression of the legislative will." (Citation omitted; internal quotation marks omitted.) *International Business Machines Corp.* v. *Brown*, 167 Conn. 123, 134, 355 A.2d 236 (1974); see also *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 256–57, 869 A.2d 611 (2005) (citing canon that courts must accept legislative definitions, court concluded that defendant partnership could not establish eligibility for tax credit because legislative definition of " 'taxpayer' " did not include partnerships in list of entities set forth in definition). The plaintiff's strained interpretation of § 1-212 (g), therefore, is not reasonable in light of the plain and unambiguous text of the statute.

## II

The plaintiff next claims that the court improperly deferred to the commission's interpretation of the statute. Specifically, the plaintiff argues that although the court quoted language that a decision of statutory interpretation involves a " 'de novo' " review, its analysis

suggested "great deference" to the commission's interpretation of the statute. The defendants counter that the court properly applied a de novo standard of review to the plaintiff's claims. We agree with the defendants.

In its memorandum of decision, the court rejected the plaintiff's argument that § 1-212 (g) may be read to allow scanners that are not "hand-held." The court explained as follows: "[T]he legislation set up a procedure and payment schedule for the use of hand-held scanners at the public agency . . . . The enactment of this specific provision, to the exclusion of any other type of scanner, supports the conclusion that only hand-held scanners were intended. Finally, while the legislature used the word 'means' in the third sentence, a typical word in definitions, it is equally plausible that the legislature intended to indicate that, even in allowing hand-held scanners, it was setting forth 'conditions' on their use. The court thus finds that a 'reasoned' interpretation; *Dept. of Public Safety* [v. *Freedom of Information Commission*, 298 Conn. 703, 720, 6 A.3d 763 (2010)]; of § 1-212 (g) is that it allows for the use of hand-held scanners under the conditions set forth in the statute. This interpretation of the third sentence of § 1-212 (g) is thus effective and workable. See *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 378, 977 A.2d 650 (2009)." (Citation omitted.)

Here, the court never stated nor suggested that it was affording any deference to the commission's interpretation of § 1-212 (g). That the court ruled in the commission's favor does not mean that it necessarily afforded deference to the commission. Rather, the memorandum of decision clearly shows that the court engaged in a de novo review of the statutory language, legislative history and governing precedent. See, e.g., *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 390 n.18, 709 A.2d

1116 (1998) (no deference warranted to agency interpretation when agency failed to make public declaration of interpretation and had applied interpretation for only four years); cf. *Dept. of Public Safety* v. *Freedom of Information Commission,* supra, 298 Conn. 717–18 (trial court improperly reviewed commission's decision for abuse of discretion rather than applying plenary review). We therefore conclude that the court did not improperly defer to the commission's interpretation of the statute.

## III

Finally, the plaintiff claims that the court improperly concluded that the commission's prior decision in *Kreutzer* v. *Assistant Dean, Administration & Special Projects,* supra, Freedom of Information Commission, Docket No. FIC 2004-463, was inapplicable. Specifically, the plaintiff argues that the court improperly upheld the commission's overruling of *Kreutzer.* We disagree.

In *Kreutzer,* the complainant alleged that the commission violated the act by denying him the right to scan stapled records. Id. The commission found that the complainant began to scan documents using a "battery-operated portable scanner that required individual sheets to be fed through a set of rollers in order to be copied." Id. The respondent argued that the complainant's portable scanner did not fall within the definition of " 'hand-held scanner' " in § 1-212 (g) because (1) the scanner rested on a table or flat surface and, thus, was not " 'hand-held,' (2) the device had a risk to mark or leave an impression on the records, (3) any device that pulls the original through a mechanism has a higher risk to mark the page than one in which the paper sits on a flatbed and does not move, (4) the General Assembly's intent in passing Public Acts 2002, No. 02-137, § 2,[7] was to permit a hand-held device that would

---

[7] See also Public Acts 2002, No. 02-137, § 3.

be passed over a page or section of a page, thus requiring no removal of staples and (5) removing staples unreasonably interferes with the operation of the respondent's office, because removing staples can result in files in which documents are improperly rearranged. Id. The commission in *Kreutzer* rejected the respondent's claims, stating, among other things, that the complainant's portable scanner qualified as a " 'hand-held scanner' " because it was a battery operated electronic scanning device within the meaning of § 1-212 (g). Id.

Here, the commission's final decision stated that the plaintiff's interpretation of § 1-212 (g) would "render the term 'hand-held' nugatory . . . ." Accordingly, the commission concluded that "[t]o the extent that the decision in *Kreutzer* is not in accord with the instant decision, such decision is overruled." The court upheld the commission's conclusion. The court stated that *Kreutzer* was distinguishable factually from the present case because the copies sought to be scanned in *Kreutzer*, while public documents, were not land records in a town hall but, rather, were a stapled collection of papers. Further, the court emphasized the fact that the plaintiff could not "bind an agency to a prior decision that the agency legitimately concludes needs modification." The court concluded that the commission's decision to modify *Kreutzer* was "appropriately and reasonably made."

The plaintiff argues that the commission's overruling of *Kreutzer* violates the doctrine of stare decisis. We disagree. "It is a rare case in which a court will reverse an administrative body because of its failure to apply the doctrine of stare decisis, or because in a particular case it has departed from the policy expressed in earlier cases. . . . In those cases where reversal is justified, the administrative decision must be palpably arbitrary, unreasonable or discriminatory." (Citation omitted;

internal quotation marks omitted.) *New Britain* v. *Connecticut State Board of Labor Relations*, 31 Conn. Sup. 211, 215, 327 A.2d 268 (1974). "Reconsideration of a previously stated policy is a prerogative of administrative agencies, which are ordinarily not restrained under the doctrine of stare decisis or on the grounds of equitable estoppel." Id.; see 73A C.J.S. 165, Public Administrative Law & Procedure § 292 (2004) ("[i]f a reviewing court is satisfied that the administrative agency has provided a reasoned analysis for departing from its own established policy indicating that prior policies and standards are being deliberately changed and not casually ignored, so that agency's path may reasonably be discerned, the court will affirm the agency's decision").

The plaintiff argues that no reason is stated in the commission's final decision for overruling *Kreutzer*. In the same paragraph of the final decision where the commission overruled *Kreutzer*, however, the commission explained: "It is concluded that the term 'hand-held' in § 1-212 (g) . . . is readily understood to modify the word scanner. It is further concluded that the phrase 'hand-held scanner' in § 1-212 (g) . . . is generally understood to refer to a particular type of scanner that is held in one's hand and is moved by hand across the document being scanned." The commission set forth its interpretation of § 1-212 (g) by concluding that the permissible scanners must be " 'hand-held' " within the common and ordinary meaning of the term and, accordingly, overruled *Kreutzer*. On the basis of our review of the record, we conclude that the court properly determined that the commission appropriately and reasonably overruled *Kreutzer*.

The judgment is affirmed.

In this opinion the other judges concurred.