RONALD F. GILL, JR. *v.* BRESCOME
BARTON, INC., ET AL.
(AC 34749)

Lavine, Alvord and Harper, Js.

Argued January 22—officially released April 30, 2013

*Marian H. Yun*, for the appellant (defendant Liberty Mutual Insurance Group).

*Michael J. Finn*, with whom was *Philip Markuszka*, for the appellee (defendant Chubb & Son).

*Opinion*

LAVINE, J. In this workers' compensation action, the defendant insurance carriers (insurers) for the named defendant, Brescome Barton, Inc. (employer), contest their rights of apportionment, if any, for indemnity benefits paid to the plaintiff, Ronald F. Gill, Jr.[1] The defendant Liberty Mutual Insurance Group (Liberty Mutual) appeals from the decision of the workers' compensation

---

[1] Neither the plaintiff nor the employer is a party to this appeal.

review board (board) affirming the finding and award of the compensation commissioner that it reimburse the defendant Chubb & Son (Chubb) 50 percent of the temporary total disability payments (indemnity) paid to the plaintiff following his bilateral knee replacement surgery. On appeal, Liberty Mutual claims that the board (1) applied an incorrect standard of review, (2) drew illegal or unreasonable inferences from the commissioner's findings of fact regarding an agreement between the insurers, (3) substituted its inferences for those drawn by the commissioner, (4) exceeded its authority by retrying the facts, (5) failed to adhere to the doctrine of stare decisis and (6) improperly affirmed the commissioner's finding and award that it pay 50 percent of the plaintiff's indemnity (a) on the basis of the facts and (b) as a matter of law. We affirm the decision of the board.

The commissioner found the following facts concerning the plaintiff's injuries, which the insurers do not dispute. The plaintiff sustained an injury to his left knee that arose out of and in the course of his employment on July 2, 1997 (first injury). The plaintiff, employer and Liberty Mutual entered into a voluntary agreement as to the plaintiff's permanent partial disability rating. Attached to the voluntary agreement is an office note dated April 10, 2008, from Norman R. Kaplan, the plaintiff's treating orthopedic surgeon. Kaplan stated in the note that the plaintiff's condition had worsened since 2003 and that he "will definitely need a total knee replacement" within the next three to five years. On April 3, 2002, the plaintiff sustained an injury to his right knee that arose out of and in the course of his employment (second injury). The employer, who was then insured by Chubb, accepted the second injury.

The commissioner found that the plaintiff was scheduled for bilateral knee replacement surgery (surgeries) pursuant to the recommendation of his physician and

that the insurers agreed that the surgeries were reasonable and medically necessary. Pursuant to an agreement dated March 10, 2010 (2010 agreement), the insurers agreed that Chubb would authorize and administer the surgeries and that Liberty Mutual would reimburse Chubb 50 percent of the surgical costs, incidental expenses and prescriptions related to the surgeries.

The commissioner also found that the plaintiff had accepted, without prejudice, Chubb's offer to pay him indemnity at the relapse rate of $692.75 for his disability period following the surgeries pursuant to General Statutes § 31-307b, commonly known as the relapse statute. Liberty Mutual, however, contended that it is not responsible for 50 percent of the indemnity and offered to pay 37 percent of Chubb's base rate, or $181.36. Chubb rejected the offer.[2]

A formal hearing was held before the commissioner on January 10, 2011, and the record was closed on February 14, 2011. The commissioner framed the hearing issue as what amount are the insurers, respectively, obligated to pay the plaintiff for periods of total and temporary partial disability following the bilateral knee surgeries, where each surgery concurrently disables the plaintiff.[3] The commissioner found the situation unique

---

[2] On appeal, Liberty Mutual has not contested the commissioner's finding and award as to the plaintiff's relapse rate.

[3] In its brief on appeal, Liberty Mutual cites a colloquy among the commissioner and counsel for the insurers during the formal hearing. The relevant portions of the transcript reveal the following exchange:

"[Commissioner]: And there is no dispute as to the medical necessity or the reasonableness of the surgeries, correct?

"[Counsel for Liberty Mutual]: Correct, commissioner, I believe there is even an agreement in your file. . . .

"[Commissioner]: And that will be administered by the last carrier, which is Chubb, correct . . . ?

"[Counsel for Chubb]: Yes, commissioner, pursuant to an agreement entered into by the parties at an informal hearing with a writing on March 10, 2010. Chubb will administer the bilateral total knee replacements and seek reimbursement from the Liberty for 50 percent of all expenses related to the surgery and prescription meds.

in that one knee injury does not affect the other knee injury. "The two injuries are separate and distinct injuries that do not, in concert, totally disable the plaintiff. Instead, they are concurrent to each other." Moreover, the plaintiff's decision to have both knees replaced at the same time benefits him in that he will have only one period of recovery and also benefits both insurers in that they are able to divide many of the surgical and postsurgical costs that would have been duplicative had the plaintiff opted to have his knees replaced at separate times.[4]

The commissioner's findings and award is dated May 19, 2011. In it he found that the plaintiff had reached

"[Commissioner]: My understanding is the issue had to do with the rate for which [the plaintiff] will be paid. I know Chubb is, will do the relapse rate of, and you have the amount?

"[Counsel for Chubb]: Let me just, for the record, the argument of Chubb is that as each one of these surgeries are from separate and distinct injuries and each one of these surgeries in and of itself could make the [plaintiff] temporarily totally disabled medically, that any other law other than a 50/50 apportionment between Liberty and the Chubb is inappropriate because they aren't, they aren't melding together to make the [plaintiff] temporarily totally disabled, the surgeries aren't melding together, they are separate and distinct, and each one could make the claimant temporarily totally disabled. . . . We would seek 50 percent of the temporary total disability payments from the Chubb as it would pertain to [the plaintiff's] recuperative period. . . . If the commission should so find that the relapse rate is the appropriate rate in this case, I would ask that that relapse rate of $692.75 be apportioned 50/50 between the Chubb and Liberty. Obviously, if the commission chooses no relapse rate and reverts to the prior temporary total disability rate . . . I would argue 50 percent of whatever rate is chosen by the commissioner. . . .

\* \* \*

"[Commissioner]: Okay. So the only issue I need to sort out is what, if any, amount Liberty will have to pay.

\* \* \*

"[Commissioner]: You are going to have the surgery, [plaintiff], and you're going to have it at the relapse rate that [Chubb's counsel] described. The issue of who is to pay what, Chubb is going to pay for the surgery and authorize the surgery, Chubb is going to administer the claim, and I will determine what amount if any Liberty has to pay back Chubb in regards to the weekly paycheck, the indemnity portion but not the medical portion, they already worked out, okay?"

[4] The plaintiff had bilateral knee replacement surgery on February 24, 2011.

maximum medical improvement for both injuries, but his conditions had worsened, necessitating that both of his knees be replaced and that § 31-307b applied to each injury. He further found that the injuries were separate and distinct, and that the plaintiff could have elected to undergo separate surgeries resulting in duplicative medical costs. Each knee replacement surgery concurrently disabled the plaintiff, who was entitled to indemnity at the relapse rate of $692.75. Chubb was to administer the surgeries and payments. Liberty Mutual was to reimburse Chubb 50 percent of the indemnity it paid the plaintiff in addition to 50 percent of the medical costs agreed upon by the insurers.[5]

Liberty Mutual appealed from the corrected finding and award to the board, primarily claiming that the commissioner erred by requiring Liberty Mutual to reimburse Chubb 50 percent of indemnity paid the plaintiff postsurgery.[6] The board issued a decision dated June 1, 2012, in which it identified the issue before it as "whether a trial commissioner failed to follow appropriate precedent in determining that two insurance carriers should apportion the temporary total disability resulting from the [plaintiff's] bilateral knee replacement surgery." The board found that Liberty Mutual relied on *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 819 A.2d 260 (2003), and *Malz* v. *State/University of Connecticut Health Center*, No. 4701 CRB-6-03-7

[5] Liberty Mutual filed a motion to correct the finding and award. The commissioner accepted two corrections that do not affect the issues on appeal.

[6] Liberty Mutual gave the following reasons for its appeal to the board: (1) the commissioner erred in ordering it to reimburse Chubb 50 percent of the indemnity paid to the plaintiff postsurgery, (2) the finding and award fails to cite any statute or case law that provides a legal basis for reimbursement, (3) there is no legal basis for the reimbursement ordered, (4) Chubb's reliance on common law apportionment and *Mund* v. *Farmers' Cooperative, Inc.*, 139 Conn. 338, 94 A.2d 119 (1952), to seek reimbursement from it is legally incorrect, and (5) the commissioner erred in denying Liberty Mutual's motion to correct in its entirety.

(August 20, 2004), to support its position that the commissioner had no authority to apportion liability in the manner implemented in this case; and that Chubb relied on *Mund* v. *Farmers' Cooperative, Inc.*, 139 Conn. 338, 94 A.2d 119 (1952), as authority supporting the commissioner's finding and award. The board found, however, that none of the cases cited by the insurers pertained to the facts of this case, which it determined was sui generis. Nonetheless, the board concluded that the commissioner properly had exercised his powers pursuant to General Statutes § 31-278[7] to resolve the dispute between the insurers equitably, and that his finding and award were consistent with the 2010 agreement.

In affirming the commissioner's finding and award, the board reasoned that if the plaintiff had not sustained the second injury, Liberty Mutual would have been obligated to pay the entire cost and indemnity attributable to knee replacement surgery resulting from the first injury. The board noted that double recoveries are disfavored under the Workers' Compensation Act (act); see *Nichols* v. *Lighthouse Restaurant, Inc.*, 246 Conn. 156, 164, 716 A.2d 71 (1998); *Pokorny* v. *Getta's Garage*, 219 Conn. 439, 454, 594 A.2d 446 (1991); and that any award that paid the plaintiff a full disability benefit simultaneously for each knee injury would be void as against public policy. The board agreed with the commissioner that it would be irrational to force the plaintiff to undergo two knee replacement surgeries at different times and noted that the act cannot be construed in a manner that creates an "absurd or unworkable result." See *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 291, 869 A.2d 1193 (2005).

---

[7] General Statutes § 31-278 provides in relevant part: "Each commissioner shall . . . have the power to certify official acts and shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of this chapter. . . ."

The board, however, foresaw a potential for inequity in the award during the period of the plaintiff's recovery. The board found that the commissioner's award operates only as long as each of the plaintiff's knees renders him totally disabled, but the board recognized that one of the plaintiff's knees may recover its function before the other. At that time, the insurer on the risk for the "healthy knee" will be forced to pay one half of the cost of § 31-307b benefits and the insurer on the risk for the "injured knee" will reap a windfall. The board stated that postsurgical apportionment of disability benefits must be based on contemporaneous medical evidence: "Once it is possible to ascertain which body part is responsible for disabling the [plaintiff], the burden of continuing temporary total disability benefits should rest on the [insurer] responsible for [that] body part." For this reason, the board found that any challenge to the commissioner's award regarding indemnity apportionment was premature. The board stated that when one of the plaintiff's knees is responsible for disabling the plaintiff, the insurer responsible for that injury may file a motion pursuant to General Statutes § 31-315. The board affirmed the commissioner's finding and award. Thereafter, Liberty Mutual appealed to this court.

Our resolution of the claims on appeal begins with the applicable standard of review. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination

of a question of law has not previously been subject to judicial scrutiny. . . . Where [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Internal quotation marks omitted.) *Hardt* v. *Watertown*, 95 Conn. App. 52, 55–56, 895 A.2d 846 (2006), aff'd, 281 Conn. 600, 917 A.2d 26 (2007). Because we conclude that the facts of this case present an issue of first impression; see part I of this opinion; our review of the claims on appeal is plenary.

I

Liberty Mutual claims that the board failed to adhere to the doctrine of stare decisis when resolving Liberty Mutual's appeal. Liberty Mutual claims that under appellate decisions concerning General Statutes § 31-299b,[8] Chubb is not entitled to an apportionment of the indemnity paid the plaintiff when he is temporarily totally disabled. We disagree as we are unaware of any precedent, and the insurers have not identified any, that is on point with the facts presented here.

"The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging,

[8] General Statutes § 31-299b provides in relevant part: "If an employee suffers an injury or disease for which compensation is found by the commissioner to be payable according to the provisions of this chapter, the employer who last employed the claimant prior to the filing of the claim, or the employer's insurer, shall be initially liable for the payment of such compensation. The commissioner shall, within a reasonable period of time after issuing an award, on the basis of the record of the hearing, determine whether prior employers, or their insurers, are liable for a portion of such compensation and the extent of their liability. If prior employers are found to be so liable, the commissioner shall order such employers or their insurers to reimburse the initially liable employer or insurer according to the proportion of their liability. . . ."

it saves resources and it promotes judicial efficiency." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Sullivan,* 285 Conn. 208, 216, 939 A.2d 541 (2008).

"It is a rare case in which a court will reverse an administrative body because of its failure to apply the doctrine of stare decisis, or because in a particular case it has departed from the policy expressed in earlier cases. . . . In those cases where reversal is justified, the administrative decision must be palpably arbitrary, unreasonable or discriminatory. . . . Reconsideration of a previously stated policy is a prerogative of administrative agencies, which are ordinarily not restrained under the doctrine of stare decisis or on the grounds of equitable estoppel." (Citation omitted; internal quotation marks omitted.) *Germain* v. *Manchester,* 135 Conn. App. 202, 213–14, 41 A.3d 1100 (2012). "If a reviewing court is satisfied that the administrative agency has provided a reasoned analysis for departing from its own established policy indicating that prior policies and standards are being deliberately changed and not casually ignored, so that agency's path may reasonably be discerned, the court will affirm the agency's decision." 73A C.J.S. 165, Public Administrative Law & Procedure § 292 (2004); see *Germain* v. *Manchester,* supra, 214.

Liberty Mutual claims that the board failed to follow the precedent established by *Hatt* v. *Burlington Coat Factory,* supra, 263 Conn. 279, *Mages* v. *Alfred Brown, Inc.,* 123 Conn. 188, 193 A. 780 (1937), *Marroquin* v. *F. Monarca Masonry,* 121 Conn. App. 400, 994 A.2d 727 (2010), and *Malz* v. *State/University of Connecticut Health Center,* supra, No. 4701 CRB-6-03-07. Our review of each of those cases discloses that the facts regarding the injuries therein are distinguishable from the present case.

In *Hatt*, the issue with respect to § 31-299b was whether the statute "permits apportionment only in cases of repetitive trauma or occupational disease and, therefore, does not provide a basis for apportionment of liability among insurers when the claimant has suffered two separate and distinct injuries . . . ." *Hatt* v. *Burlington Coat Factory*, supra, 263 Conn. 282–83. The plaintiff, Mary Ann Hatt, suffered an injury to her left foot in 1988. Id., 284. Despite medical treatment, the pain progressively worsened and the appearance of her foot changed, which resulted in an increased disability rating in 1999. Id., 284–86. The first insurer contested liability, claiming that Hatt's ongoing treatment was unrelated to the 1988 injury. Id., 285. In 1998, Hatt's employer was insured by another carrier, which also contested liability. Id., 286. Following a formal hearing, the commissioner found that Hatt's condition was a *cumulative injury* resulting from work activities following the 1988 injury and apportioned liability between the two insurers pursuant to § 31-299b. Id., 286–87. The first carrier appealed to the board, which reversed the commissioner's award finding that Hatt had suffered two separate injuries to her left foot. Id., 287. The board concluded that "the apportionment scheme under § 31-299b was inapplicable because the statute addresses single injuries such as occupational diseases or repetitive traumas . . . ." Id. Apportionment under § 31-299b is permitted only in instances of a single injury caused by multiple exposures such as repetitive injuries or occupational diseases. Id., 315. Therefore, pursuant to General Statutes § 31-349, the second insurer was solely liable for all expenses stemming from the 1998 injury. Id., 288. Our Supreme Court agreed with the board's conclusions regarding §§ 31-299b and 31-349. Id., 312–13. The facts of the case before us now are distinguishable from *Hatt*, not because there were two separate

injuries, but because each injury is independent of the other in rendering the plaintiff disabled.[9]

[9] The board concluded that none of the following cases relied upon by the parties controlled the issue in this case. We agree.

In *Mages* v. *Alfred Brown, Inc.*, supra, 123 Conn. 188, Gabriel Mages injured his spine while in the employ of one employer who accepted the injury. Id., 190. Mages was later employed by a second employer when he fell and reinjured his spine and was no longer able to work. Id. Our Supreme Court held that the insurer for the second employer was liable for the disability because there were two injuries and Mages' prior injury had no effect on the liability of the second employer, as Mages probably would have been able to continue to work save for the second injury. Id., 194. *Mages* is distinguishable from the facts of the present case where there are two separate injuries, each of which independently renders the plaintiff disabled.

The case of *Marroquin* v. *F. Monarca Masonry*, supra, 121 Conn. App. 400, is distinguishable, as well. This court determined that *Hatt* did not control *Marroquin* because it was factually distinct. In contrast to *Hatt*, which involved "successive insurers for the same employer and a claimant with *two separate and distinct injuries*, each of which was suffered during a different insurer's policy coverage, we are presented [here] with multiple insurers and a claimant with a *single injury*. We do find highly significant the Supreme Court's statement in *Hatt* that in enacting § 31-299b, the legislature explicitly provided for an apportionment scheme in the single injury and multiple employer or insurer scenario . . . and we conclude that under § 31-299b, the commissioner had the authority to apportion liability to the responsible employer-insurer in this single injury and multiple employer or insurer scenario." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 411–12. Because *Marroquin* concerned a single injury, it is inapposite to the present case.

*Malz* v. *State/University of Connecticut Health Center*, supra, No. 4701 CRB-6-03-07, also is distinguishable. In that case, Stephania Malz suffered an injury to her lumbar spine and cervical spine in 1990. She suffered a second injury to her cervical spine in 1994. The commissioner concluded that the insurance carrier for the 1994 injury was not entitled to apportionment pursuant to *Hatt* v. *Burlington Coat Factory*, supra, 263 Conn. 279, "where two separate compensable injuries contribute to subsequent disability." In the present case, two separate injuries do not contribute to the plaintiff's disability.

Before the board, Chubb relied on *Mund* v. *Farmers' Cooperative, Inc.*, supra, 139 Conn. 338, for its apportionment claim. The board distinguished *Mund* in its opinion. Chubb does not rely on *Mund* on appeal before this court. We agree with the board that the facts of *Mund* are distinguishable from the present facts. In *Mund*, the claimant suffered a ruptured disc in 1946, but eventually was able to return to work, and subsequently reopened the disc in an accident in 1950. Id., 340–41. The commissioner found that the two ruptures of the disc were "equal, concurrent and contributing causes" of the claimant's resulting disability. Id., 341. The injury was apportioned between the two carriers. Id.

Here, the commissioner found that the plaintiff's knee injuries were separate and concurrent, not cumulative. Liberty Mutual has not disputed that finding. On the basis of our review of the record, the briefs of the parties, and the cases that they claim have precedential value, we conclude that the board properly found the facts of this case sui generis. The board's decision therefore does not violate the doctrine of stare decisis. Because we are called upon to construe § 31-299b under a unique fact pattern, our review is plenary.

## II

The essence of Liberty Mutual's claims on appeal is that the board (a) failed to adhere to the applicable standard of review because it found facts with regard to the 2010 agreement not found by the commissioner and (b) improperly affirmed the commissioner's finding and award as a matter of law. We conclude that the facts found by the board were gratuitous and unnecessary to the resolution of the legal issue before it, but that the board's error, if any, was harmless. See *Testone* v. *C. R. Gibson Co.*, 114 Conn. App. 210, 219, 969 A.2d 179 (error harmless if record reveals sufficient independent evidence to support decision), cert. denied, 292 Conn. 914, 973 A.2d 663 (2009). The findings of the commissioner are sufficient to support his award, which is grounded in the remedial purpose of the act.

## A

Liberty Mutual claims that the board improperly found facts concerning the 2010 agreement that were not found by the commissioner. Assuming, without deciding; see footnote 10 of this opinion; that the board violated the standard of review by finding facts with respect to the 2010 agreement, we conclude that any error was harmless.

We begin our analysis by setting forth the scope of our review on which Liberty Mutual relies.[10] "The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's finding and award. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed. . . . Put another way, the board is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." (Citations omitted; internal quotation marks omitted.) *Brown* v. *Dept. of Correction*, 89 Conn. App. 47, 53, 871 A.2d 1094, cert. denied, 274 Conn. 914, 879 A.2d 892 (2005).

The following facts are relevant to Liberty Mutual's claims. In its finding and award, the commissioner

[10] We note that the general principles governing the construction of a contract are well established. "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Sagalyn* v. *Pederson*, 140 Conn. App. 792, 795, 60 A.3d 367 (2013). Whether the 2010 agreement is ambiguous was not briefed by the insurers. Although that issue would affect the board's standard of review, we need not decide the question of ambiguity to resolve Liberty Mutual's claim.

found that, pursuant to the 2010 agreement, Chubb was to administer the plaintiff's knee replacement surgeries and pay the surgical costs, incidental expenses, and prescriptions related to the surgery, and that Liberty Mutual would reimburse Chubb 50 percent of those costs. The commissioner specifically found that the 2010 agreement did not address the rate of indemnity benefits to be paid the plaintiff nor the insurers' respective contributions toward indemnity. During the formal hearing, the commissioner stated that the purpose of the hearing was to determine the respective amount each of the insurers was obligated to pay the plaintiff for indemnity. See footnote 3 of this opinion. The commissioner's award set the plaintiff a relapse rate at $692.75 per week and directed Liberty Mutual to reimburse Chubb 50 percent of the indemnity in addition to 50 percent of the costs agreed upon by the parties.

In its decision, the board noted the commissioner's finding that the 2010 agreement did not address the plaintiff's relapse rate or the contribution each insurer was obligated to pay for indemnity. The board noted that workers' compensation benefits derive exclusively from the act and that " '[a] commissioner may exercise jurisdiction to hear a claim only under the precise circumstances and in the manner particularly prescribed by the enabling legislation.' *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 160, [740 A.2d 796] (1999)." The board found, however, that "the apportionment statutes and case law do not address the 'precise circumstances' " of this case. It concluded that because the present dispute is one of first impression, it was required "to look at the expressed intent of the parties and the statutory approach to compensating total disability injuries in the absence of multiple liable parties."

The board stated that lacunae are present in the act, and, that when issues are presented to it, the board has an obligation to reach a reasoned outcome consistent

with the act. It found that the commissioner's finding and award simply implemented the expressed intent of the parties' 2010 agreement. Although the 2010 agreement does not define surgical costs or incidental expenses, in this instance, the board found that incidental expenses would include the unavoidable expense of § 31-307b benefits due the plaintiff for the period of temporary total disability he would experience following his surgeries. It is these findings to which Liberty Mutual takes exception on appeal.

Our Supreme Court has noted that "[o]ver the course of the last 100 years, [it] frequently has interpreted the provisions of our workers' compensation statutory scheme by looking at the purpose and the legislative history of the act." *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 577, 986 A.2d 1023 (2010). As discussed in part II B of this opinion, the commissioner analyzed the plaintiff's injuries as being independent of one another, concluded that the replacement of either knee would involve a period of temporary total disability, determined that having simultaneous bilateral knee surgery benefitted the plaintiff as well as the insurers in that the plaintiff incurred only one period of recovery and decided that it made sense for the insurers to share equally the cost of indemnity. The board concluded that the commissioner's award falls within the remedial purpose of the act. To require the plaintiff to undergo two surgeries at different times would constitute an absurd result under the act. See *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 583–84, 726 A.2d 502 (1999) (statutes cannot be construed to yield absurd result).

On the basis of this analysis, we conclude that the commissioner's findings are sufficient to support his award. If the board's findings with respect to the insurers' intent regarding incidental expenses deviated from the standard of review, we conclude that any error was

harmless. See *State* v. *Burney*, 288 Conn. 548, 560, 954 A.2d 793 (2008) (court may rely on any ground supported by record to affirm judgment).

B

Liberty Mutual also claims that the board's decision is not supported by competent evidence and that the order to reimburse Chubb 50 percent of the indemnity it pays to the plaintiff is erroneous as a matter of law. We disagree.

The commissioner found that neither insurer disputed that the plaintiff's need for bilateral knee surgery was reasonable and medically necessary. He also found that knee replacement surgery for either knee would result in a period of disability. Moreover, the plaintiff's "decision to undergo both knee replacements simultaneously benefits [him] in that he has only one period of recovery and also benefits both insurance carriers in that they are able to split many of the surgical and postsurgical costs that would be duplicative had the [plaintiff] opted for two separate surgeries." In reviewing the commissioner's analysis, the board found that forcing the plaintiff to undergo separate knee replacement at different times and to incur a longer period of disability would be irrational. We agree.

In deciding the claim, we are mindful of the act's remedial purpose. "[T]he act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Accordingly, [i]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act. . . . [T]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering

those purposes." (Citations omitted; internal quotation marks omitted.) *Pizzuto* v. *Commissioner of Mental Retardation*, 283 Conn. 257, 265, 927 A.2d 811 (2007).

On appeal to this court, Liberty Mutual contends that the commissioner's finding and award is erroneous as a matter of law because enforcement of the 2010 agreement pursuant to General Statutes § 31-303 was not identified in the notice of the formal hearing as an issue to be resolved.[11] Enforcement of the agreement was not the issue decided by the commissioner. Rather, the commissioner decided how to apportion the indemnity paid to the plaintiff during his temporary total disability following bilateral knee replacement surgery. The commissioner therefore did not enforce the 2010 agreement, which it found did not address the rate of the plaintiff's indemnity or the contribution from each of the insurers.

Liberty Mutual argues that *Hatt* v. *Burlington Coat Factory*, supra, 263 Conn. 279, controls because the plaintiff's "single period of disability following his simultaneous surgeries will be a result of the inextricable combination of the two injuries. Therefore, inasmuch as it is necessary for the two injuries to combine to reach the same conclusions found in the *Hatt* case, the same would be applicable to the instant case." (Internal quotation marks omitted.) This argument ignores the commissioner's finding that the plaintiff's first and second injuries are separate and distinct and that neither injury affects the other. In fact, Liberty Mutual has acknowledged, as it must, that it would be liable for any temporary total disability the plaintiff would incur if he had knee replacement surgery for the first injury independent of the surgery for the second

---

[11] The formal hearing notice listed three issues: "§ 31-299b—Apportionment of Liability; § 31-307b—Recurrence of Prior Injury; [General Statutes] § 31-310—Compensate Rate/Average Weekly Wage."

injury.[12] See *Costello* v. *Seamless Rubber Co.*, 99 Conn. 545, 549, 122 A. 79 (1923) (injuries involving the loss of member ordinarily involve period of incapacity). Liberty Mutual argues, however, that because the concurrent surgeries will render the plaintiff disabled for a period of time, Chubb, as the insurer on the second injury, is liable for all of the plaintiff's indemnity and that it is irrelevant that the plaintiff elected to undergo contemporaneous bilateral knee replacement surgeries. By agreeing to pay 50 percent of the medical costs of the plaintiff's bilateral knee replacement surgeries, it disavows the validity of its argument that only Chubb as the insurer for the plaintiff's second injury is liable for the whole.

We also disagree with Liberty Mutual's claim that the board's decision cites no law to support it. The board relied upon § 31-278, which provides in relevant part that "[e]ach commissioner . . . shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of" the act. "The purpose of the [act] is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer . . . . [The act] compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation. . . . The act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . The humanitarian and remedial

---

[12] The corollary to this acknowledgement is that Liberty Mutual is liable to pay the plaintiff indemnity for the disability resulting from knee replacement surgery due to the first injury whether it is done separately or in combination with the second injury knee replacement surgery. If both Liberty Mutual and Chubb paid the plaintiff temporary total disability for the same period of time, the plaintiff would receive a double recovery. The board properly noted that double recoveries under the act are disfavored. See *Enquist* v. *General Datacom*, 218 Conn. 19, 26, 587 A.2d 1029 (1991); see also 6 A. Larson & L. Larson, Workers' Compensation Law (2012) § 110.02, pp. 110-3 through 110-6.

purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. . . . Further, our Supreme Court has recognized that the state of Connecticut has an interest in compensating injured employees to the fullest extent possible . . . ." (Internal quotation marks omitted.) *Jones* v. *Connecticut Children's Medical Center Faculty Practice Plan,* 131 Conn. App. 415, 422–23, 28 A.3d 347 (2011). "The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 97, 491 A.2d 368 (1985). In appeals arising under the act, "we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act." *Doe* v. *Stamford,* 241 Conn. 692, 698, 699 A.2d 52 (1997).

We agree with the reasoning of the commissioner and the board that the remedial purposes of the act are fostered by the plaintiff's undergoing bilateral knee replacement surgery with one period of recovery. The act is to provide for "relatively quick and certain compensation." *Mingachos* v. *CBS, Inc.,* supra, 196 Conn. 97. Moreover, the commissioner's finding and award benefits the insurers in that they are able to share in the costs of the plaintiff's temporary total disability postsurgery. Although the commissioner ordered each insurer to pay 50 percent of the indemnity owed the plaintiff, he did not order the parties to apportion a percentage of the indemnity for a single injury or combination of injuries. The commissioner directed the insurers to pay 50 percent of the plaintiff's indemnity for a period of disability he elected to incur by having the separate first and second injuries treated by means of simultaneous bilateral knee replacement surgeries. Liberty Mutual acknowledges it is responsible for the plaintiff's first injury and that it would be liable for all costs if the plaintiff had knee replacement surgery for the

first injury at a time other than when the second injury knee replacement surgery took place. As noted, we wholly agree with the commissioner and the board that it is not reasonable to expect the plaintiff to undergo two periods of recovery. We therefore conclude that the board properly affirmed the commissioner's finding and award in which it reached a reasoned decision consistent with the act.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.