******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RONALD F. GILL, JR. *v.* BRESCOME
BARTON, INC., ET AL.
(SC 19201)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued December 10, 2014—officially released May 26, 2015*

*Marian H. Yun,* for the appellant (defendant Liberty
Mutual Insurance Group).

*Michael J. Finn*, with whom were *Ryan D. Ellard*, *Shanique D. Fenlator* and, on the brief, *Brittany T. DeLieto*, for the appellee (defendant Chubb & Son).

*Opinion*

ROBINSON, J. The principal issue in this certified appeal is whether, under the unique factual circumstances of this case, a workers' compensation commissioner had the authority to require one insurance carrier to reimburse another insurance carrier for one half of a claimant's temporary total disability payments—given that the commissioner was authorized to impose the full amount of such payments on either insurance carrier under a literal reading of the relapse statute, General Statutes § 31-307b.[1] The defendant Liberty Mutual Insurance Group (Liberty Mutual) appeals, upon our grant of its petition for certification,[2] from the judgment of the Appellate Court affirming the decision of the Workers' Compensation Review Board (board), which had affirmed the corrected finding and award of the Workers' Compensation Commissioner for the Eighth District (commissioner) requiring Liberty Mutual to reimburse the defendant Chubb & Son (Chubb) for 50 percent of the temporary total disability payments due to the plaintiff, Ronald F. Gill, Jr. (claimant), after his bilateral knee replacement surgery.[3] *Gill* v. *Brescome Barton, Inc.*, 142 Conn. App. 279, 281–82, 68 A.3d 88 (2013). On appeal, Liberty Mutual claims, inter alia, that the commissioner lacked the authority to order the reimbursement. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. The claimant suffered a compensable work-related injury to his left knee on July 2, 1997. At the time of the left knee injury, Liberty Mutual was the workers' compensation insurance carrier for the claimant's employer, the named defendant, Brescome Barton, Inc. (employer). Subsequently, the claimant suffered a compensable work-related injury to his right knee on April 3, 2002. At the time of the right knee injury, Chubb was the workers' compensation insurance carrier for the employer. These knee injuries were completely unrelated to each other. Liberty Mutual has not disputed its responsibility for the left knee injury and Chubb has not disputed its responsibility for the right knee injury.

At the recommendation of his physician, the claimant was scheduled to have bilateral knee replacement surgery on February 24, 2011. Liberty Mutual and Chubb agreed that this type of surgery was medically necessary and, moreover, that it was reasonable for both knees to be operated on at the same time. On March 10, 2010, the insurance carriers[4] entered into a voluntary agreement stating that Chubb would administer the payment for the surgery and, in turn, that Liberty Mutual would reimburse Chubb for 50 percent of the surgery costs and incidental expenses.

Although the insurance carriers agreed about paying

for the claimant's surgery, they were unable to reach a similar agreement about paying for the claimant's temporary total disability benefits, to which he would be entitled while he recuperated. Initially, Liberty Mutual offered to reimburse Chubb for these benefits at less than one half of the claimant's relapse rate—but Chubb did not accept. Consequently, the insurance carriers proceeded to a formal hearing to resolve their dispute before the commissioner on January 10, 2011.

At the formal hearing, the commissioner heard arguments from the insurance carriers regarding the amount of the claimant's temporary total disability benefits that each should be required to pay. Chubb noted, and Liberty Mutual did not dispute, that the knee injuries were "separate and distinct," and that undergoing replacement surgery for either knee would leave the claimant temporarily totally disabled. The commissioner informed the claimant, who was present at the formal hearing, that he would have his upcoming surgery and be paid temporary total disability benefits at his relapse rate. The commissioner added that Chubb would administer the claim for benefits and, further, that his determination would effectively be limited to the amount, if any, that Liberty Mutual should reimburse Chubb for the temporary total disability benefits.

The commissioner issued a corrected finding and award on June 7, 2011.[5] The listed issue for determination was: "What amount are [Liberty Mutual and Chubb] obligated to pay the claimant for periods of total and temporary partial disability following bilateral knee replacement where each surgery concurrently disables the claimant?" The commissioner found that the claimant "had reached maximum medical improvement for both injuries and now needs a total knee replacement for both knees." The commissioner added: "This is a unique situation where neither knee injury affects the other injury. The combination of the two surgeries does not result in the claimant being totally disabled—either knee replacement would totally disable the claimant following surgery. The two injuries are separate and distinct injuries that do not in concert totally disable the claimant. Instead, they are concurrent to each other. The decision to undergo both knee replacements simultaneously benefits the claimant in that he has only one period of recovery and also benefits both insurance carriers in that they are able to split many of the surgical and postsurgical costs that would be duplicative had the claimant opted for two separate surgeries." Ultimately, the commissioner determined that the relapse statute, § 31-307b, applied to either knee injury and, therefore, the claimant was entitled to receive temporary total disability payments at his relapse rate of $692.75 per week.[6] The commissioner ordered Liberty Mutual to reimburse Chubb for 50 percent of such payments.

Liberty Mutual appealed from the corrected finding and award to the board, primarily claiming that the commissioner had failed to follow precedent precluding apportionment in circumstances where a claimant's separate and distinct injuries combine together and cause disability.[7] Chubb, for its part, argued that the commissioner's corrected finding and award was supported by precedent permitting apportionment in circumstances where a claimant's single preexisting injury is aggravated over time and causes disability.[8] On June 1, 2012, the board affirmed the commissioner's corrected finding and award, concluding that none of the apportionment precedent cited by the parties governed the sui generis factual circumstances of the case. The board then determined that the commissioner had properly exercised the authority granted to him under General Statutes § 31-278[9] by equitably resolving the insurance carriers' dispute over the temporary total disability payments that were due to the claimant under the relapse statute, § 31-307b. The board opined that the commissioner could not have lawfully required *both* of the insurance carriers to remit the total amount of temporary total disability payments, as doing so would have violated Connecticut's well established prohibition on double recoveries. Moreover, the board observed that, if one knee were to recover before the other and was no longer disabling to the claimant, the responsible insurance carrier could file a motion to modify the award, therein asserting that the changed circumstances should require the other insurance carrier to bear the payments in full going forward. The board, however, also reasoned that the commissioner's corrected finding and award was supported implicitly by the insurance carriers' March 10, 2010 agreement, stating: "The agreement in question does not define the term 'surgical costs' or 'incidental expenses.' We believe in this instance 'incidental expenses' would include the unavoidable expense of . . . benefits due [to] the claimant postsurgery."

Liberty Mutual appealed from the board's decision to the Appellate Court, claiming, inter alia, that the board failed to apply controlling apportionment precedent and improperly analyzed the March 10, 2010 agreement. The Appellate Court disagreed as to the first claim, concluding that none of the precedent cited by Liberty Mutual was "on point with the facts presented here." *Gill* v. *Brescome Barton, Inc.*, supra, 142 Conn. App. 288. As for the second claim, the Appellate Court concluded that, even if the board had improperly reached a conclusion about the intended meaning of "incidental expenses" under the March 10, 2010 agreement, any such error was harmless because "[t]he findings of the commissioner are sufficient to support his award, which is grounded in the remedial purpose of the [Workers' Compensation Act, General Statutes § 31-275 et seq.]." Id., 292. Specifically, the Appellate

Court noted that it would be absurd to "require the [claimant] to undergo two surgeries at different times . . . ." Id., 295. The Appellate Court further cited § 31-278 as a source of authority for the commissioner to resolve statutory lacunae in a remedial manner. Id., 299. Accordingly, the Appellate Court unanimously affirmed the decision of the board. Id., 300. This certified appeal followed. See footnote 2 of this opinion.

On appeal, Liberty Mutual claims that certain aspects of the decisions of the board and the Appellate Court were inconsistent with the commissioner's findings. See footnote 14 of this opinion. The dispositive thrust of Liberty Mutual's argument, however, is that the commissioner lacked any statutory authority to order the reimbursement to Chubb. Specifically, Liberty Mutual contends that the factual circumstances of this case fall within our existing legal framework for apportionment disputes, and that "the Workers' Compensation Act does not provide statutory power to a commissioner to order reimbursement between two carriers with separate and distinct injuries." Liberty Mutual further cites *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 730 A.2d 630 (1999), for the proposition that any necessary powers granted to the commissioner pursuant to § 31-278 do not, standing alone, authorize the commissioner to order one insurance carrier to reimburse another insurance carrier for a portion of a claimant's temporary total disability payments.[10]

In response, Chubb argues that "the underlying matter [was] squarely in the province" of the commissioner, who "was faced with a unique set of circumstances for which there was no applicable precedent." Chubb observes that, following two separate and distinct work-related knee injuries, the claimant sought to have bilateral knee replacement surgery with the financial support of his employer's successive insurance carriers. Moreover, Chubb notes the commissioner's finding that the medically necessary replacement of either knee would independently result in a period of temporary total disability for the claimant and, thus, that the insurance carriers were concurrently liable for postsurgery disability payments under the relapse statute, § 31-307b. At that juncture, Chubb asserts, the commissioner needed to avoid awarding a double recovery to the claimant and instead "equitably resolved the dispute between the [insurance carriers] regarding the division of indemnity benefits calculated pursuant to § 31-307b, which is in accordance with the commissioner's powers granted under § 31-278."[11] We agree and conclude that, given the unique factual circumstances of this case, the commissioner had the authority to order Liberty Mutual to reimburse Chubb for 50 percent of the claimant's temporary total disability payments.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals.

The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny"; (internal quotation marks omitted) *Deschenes* v. *Transco, Inc.*, 288 Conn. 303, 311, 953 A.2d 13 (2008); or when its construction of a statute has not been "time-tested." (Internal quotation marks omitted.) *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 550, 108 A.3d 1110 (2015).

The present appeal requires us to determine whether the commissioner acted within the realm of his statutory authority in ordering Liberty Mutual to reimburse Chubb for 50 percent of the claimant's temporary total disability payments. The scope of our discussion is narrowed, however, because counsel for Liberty Mutual conceded at oral argument before this court that, in this instance, the commissioner possessed the statutory authority to order either of the insurance carriers to make 100 percent of the claimant's temporary total disability payments pursuant to the relapse statute, § 31-307b.[12] Thus, this case is most accurately framed as one in which the commissioner held concurrent statutory authority over the insurance carriers as to payment, and not one in which there was a vacuum of such statutory authority.[13]

We can think of no logical reason why, if the commissioner was authorized under the literal language of the relapse statute to order either of the insurance carriers to make 100 percent of the claimant's temporary total disability payments, he would not also be authorized to order each of the insurances carriers to make, in effect, only 50 percent of such payments. In our view, the claimant's bilateral knee replacement surgery presented the commissioner with a highly unusual dilemma arising under § 31-307b, which he then necessarily resolved in a lawful and reasonable manner. See General Statutes § 31-278 ("[e]ach commissioner . . . shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of this chapter"); cf. 2 Am. Jur. 2d 67, Administrative Law § 54 (2014) ("Generally, administrative agencies have the implied powers that are reasonably necessary in order to carry out the powers expressly granted. The reason for an agency's implied powers is that, as a practical matter, the legislature cannot foresee all the problems incidental to carrying out the duties and responsibilities of the agency." [Footnote omitted.]).

In theory, the commissioner had three ways to resolve the insurance carriers' dispute about their concurrent responsibility for the claimant's temporary total disability benefits. First, he could have ordered both insurance carriers to pay the claimant fully at his relapse rate. The parties do not dispute, however, that such an approach would have violated our state's long-standing general prohibition on double recoveries for claimants. See, e.g., *Enquist* v. *General Datacom*, 218 Conn. 19, 26, 587 A.2d 1029 (1991) ("[o]ne of the purposes of the workers' compensation statute is the avoidance of two independent compensations for the injury" [internal quotation marks omitted]); see also id., 26 n.6 ("[t]he policy of avoiding double recovery is a strong one, and has on occasion been invoked to override a result that might be thought required by a literal or technical interpretation of statutes" [internal quotation marks omitted]).

Second, the commissioner could have ordered just one of the insurance carriers to pay the claimant fully at his relapse rate. Because the commissioner found that either knee replacement surgery would independently result in a period of temporary total disability for the claimant, such an approach would have allowed the second insurance carrier to be a free rider due to the fortuitous, overlapping timing of these surgeries.

The third approach, actually taken, was for the commissioner to order each insurance carrier to pay, in effect, one half of the claimant's relapse rate. Given the alternatives, this course of action was a necessary and reasonable interim compromise, subject to possible later modification upon the motion of either insurance carrier. See General Statutes § 31-315 ("[a]ny award of, or voluntary agreement concerning, compensation made under the provisions of this chapter . . . shall be subject to modification . . . upon the request of either party . . . whenever it appears to the compensation commissioner, after notice and hearing thereon . . . that changed conditions of fact have arisen which necessitate a change of such agreement [or] award . . . in order properly to carry out the spirit of this chapter"). Accordingly, we conclude that, given the unique factual circumstances of this case, the commissioner had the authority to order Liberty Mutual to reimburse Chubb for one half of the temporary total disability payments to which the claimant was entitled pursuant to the relapse statute, § 31-307b.[14]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 31-307b provides in relevant part: "If any employee who receives compensation under section 31-307 returns to work after recovery from his or her injury and subsequently suffers total or partial incapacity caused by a relapse from the recovery from, or a recurrence of, the injury, the employee shall be paid a weekly compensation equal to seventy-five per cent of his or her average weekly earnings as of the date of the original injury or at the time of his or her relapse or at the time of the

recurrence of the injury, whichever is the greater sum, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310 . . . ."

[2] We granted Liberty Mutual's petition for certification for appeal limited to the following issue: "Did the Appellate Court correctly conclude that the Workers' Compensation Review Board properly determined that the appellant, Liberty Mutual . . . was required to reimburse the appellee, Chubb & Son, 50 percent of the temporary total disability payments paid to the claimant following his [bilateral] knee replacement surgery?" *Gill* v. *Brescome Barton, Inc.*, 310 Conn. 912, 76 A.3d 629 (2013).

[3] Neither the claimant nor his employer, the named defendant, Brescome Barton, Inc., is a party to the present appeal.

[4] For the sake of simplicity, we may refer to Liberty Mutual and Chubb jointly as the insurance carriers.

[5] Previously, Liberty Mutual had filed a motion to correct the original finding and award. The commissioner made certain corrections, but they do not affect the issues in this certified appeal.

[6] On appeal, Liberty Mutual has not disputed the applicability of the relapse statute, § 31-307b, to the claimant's postsurgery recuperation period.

[7] Liberty Mutual specifically relied on *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 819 A.2d 260 (2003), and *Malz* v. *State/University of Connecticut Health Center*, No. 4701, CRB 6-03-7 (August 20, 2004).

[8] Chubb specifically relied on *Mund* v. *Farmers' Cooperative, Inc.*, 139 Conn. 338, 94 A.2d 19 (1952).

[9] General Statutes § 31-278 provides in relevant part: "Each commissioner . . . shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of this chapter. . . ."

[10] At times, Liberty Mutual's argument that the commissioner lacked statutory authority appears to blend into an argument that the commissioner lacked subject matter jurisdiction to adjudicate the insurance carriers' dispute over the temporary total disability payments. Because the concepts are prone to conflation, we briefly note some nuanced differences between subject matter jurisdiction and statutory authority. Subject matter jurisdiction describes the power of a tribunal to adjudicate a particular type of controversy; it relates to a tribunal's competency to hear and resolve a dispute. *Keller* v. *Beckenstein*, 305 Conn. 523, 531, 46 A.3d 102 (2012). Statutory authority, in contrast, describes the "way in which [a tribunal's] power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004).

To the extent that Liberty Mutual appears to argue that the commissioner lacked subject matter jurisdiction in this action, we conclude that any such claim is untenable. It is undisputed that the surgical replacement of either knee would temporarily totally disable the claimant, thereby entitling him to payment from the associated insurance carrier under the Workers' Compensation Act—and more specifically under the relapse statute, § 31-307b. The insurance carriers' dispute about sharing these payments in light of the claimant's undergoing *bilateral* knee replacement surgery thus presents a legal question arising directly from the application of provisions of the Workers' Compensation Act. See *Castro* v. *Viera*, 207 Conn. 420, 427, 541 A.2d 1216 (1988) ("[j]urisdiction of the subject-matter is the power [of a tribunal] to hear and determine cases of the general class to which the proceedings in question belong" [internal quotation marks omitted]); see also General Statutes § 31-278 ("[the] commissioner shall hear all claims and questions arising under this chapter"). In this regard, the present case is distinguishable from *Stickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 762, cited by Liberty Mutual, which held that subject matter jurisdiction did not exist when the central legal question that an insurance carrier sought to have the commissioner hear and determine was "an insurance coverage issue, requiring the evaluation of insurance policies and the application of contract law." Because we conclude that the commissioner had subject matter jurisdiction in this action, we therefore focus our attention on Liberty Mutual's argument that the commissioner lacked the statutory authority to order the reimbursement to Chubb.

[11] In passing, Chubb contends that the reimbursement order was also consistent with the commissioner's equitable powers granted under General Statutes § 31-298. This court, however, has "interpreted [§ 31-298] to cover

only the manner in which hearings are conducted," and not the ensuing manner in which a commissioner provides relief between parties. *Leonetti* v. *MacDermid, Inc.*, 310 Conn. 195, 218, 76 A.3d 168 (2013).

[12] The following colloquy evinces Liberty Mutual's concession:

"The Court: But you would agree that the commissioner had the authority to order Liberty Mutual to pay temporary total disability, in accordance with the applicable rate, for the disability occurring [on the left] knee, correct?

"[Counsel for Liberty Mutual]: Correct, Your Honor. Absolutely. Yes. He would . . . have the authority to do that, yes. And the insurance carrier would have a full obligation to pay that, yes.

"The Court: Right. So the commissioner also has the authority to do the exact same thing with Chubb on the other knee, correct?

"[Counsel for Liberty Mutual]: Correct, Your Honor.

"The Court: So . . . it seems to me that this case comes down to a windfall to the claimant, or a splitting, an equitable distribution, between the two insurance companies. I don't understand where there's any lack of authority on the part of the commissioner to do that."

[13] To the extent that Liberty Mutual argues that this court's apportionment precedent bars the reimbursement order, we note—as did the board and the Appellate Court—that the present action involves a distinguishable, sui generis fact pattern. Liberty Mutual relies on *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 306–309, 819 A.2d 260 (2003), which held that an earlier employer was not responsible for any of a subsequent employer's disability payments for a later, separate and distinct injury to a claimant's foot. By comparison, it cannot be said that Liberty Mutual is being held responsible for any of Chubb's disability payments for the later, separate and distinct injury to the claimant's right knee. Both knees required replacement surgery, and the surgery on *either* knee would independently render the claimant temporarily totally disabled.

[14] Beyond its claim that the commissioner lacked statutory authority to order reimbursement in this case, Liberty Mutual also raises two claims of error during the appellate review process. First, Liberty Mutual argues that the board improperly substituted its judgment for that of the commissioner when it misinterpreted the "incidental expenses" term in the insurance carriers' March 10, 2010 agreement. Specifically, Liberty Mutual asserts that—from the inception of this dispute—both insurance carriers openly acknowledged that their agreement did not encompass temporary total disability benefits, thus making it improper for the board to determine sua sponte that "in this instance 'incidental expenses' would include the unavoidable expense of . . . benefits due [to] the claimant postsurgery." Remarkably, Liberty Mutual argues that the board's decision was premised *entirely* on this improper misinterpretation of the "incidental expenses" term, even though only one subsidiary paragraph of the board's seven page decision examined the matter.

Second, Liberty Mutual argues that the Appellate Court improperly assumed that the board's misinterpretation was harmless error because its decision avoided the absurd result of forcing the claimant to have two separate knee replacement surgeries. See *Gill* v. *Brescome Barton, Inc.*, supra, 142 Conn. App. 295. In making this assumption, Liberty Mutual contends, the Appellate Court echoed the board's faulty reading of the commissioner's corrected finding and award, because the commissioner did "not point out [that] any such horrors" as forced separate surgeries were ever contemplated during the present action. Relatedly, Liberty Mutual asserts that the remedial purpose of the Workers' Compensation Act was not threatened, because this dispute was not focused on whether the claimant would receive humane medical treatment or due compensation, but rather on whether it would be appropriate to order reimbursement between the insurance carriers.

We agree that the board improperly misinterpreted the "incidental expenses" term and, moreover, that the record does not show any actual contemplation of forcing the claimant to undergo two separate surgeries. We disagree, however, that either of these apparent missteps during the review process were prejudicial to Liberty Mutual. As we have explained, the commissioner's corrected finding and award fit within the statutory framework of the Workers' Compensation Act. Cf. *State* v. *Burney*, 288 Conn. 548, 560, 954 A.2d 793 (2008) ("court may rely on any grounds supported by the record in affirming the judgment of a trial court"). We therefore conclude that the corrected finding and award was supported on independent grounds relating to the commissioner's proper exercise of his statutory authority.